**Allen Wayne JANECKA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 71803.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 27, 1996.

Rehearing Denied Jan. 29, 1997.

Michael B. Charlton, Charles J. Brink, Will M. Helixon, Brent E. Newton, Houston, for appellant.

Alan Curry, Assistant District Attorney, Houston, Matthew Paul, Austin, for appellee.

## OPINION

PER CURIAM.

In October 1993 appellant was retried and convicted under Texas Penal Code § 19.03(a)(3) of the 1979 murder for remuneration of a fourteen-month-old infant.[1] The jury affirmatively answered the two special issues submitted under Article 37.0711 § 3(b)(1) & (2) and negatively answered the mitigation special issue submitted under 37.0711 § 3(e).[2] Appellant was sentenced to death as mandated by Article 37.0711 § 3(g). Article 37.0711 § 3(j) provides for direct appeal to this Court. We affirm.

A brief account of the investigation and prosecution of this case is helpful to understanding some of appellant's arguments.

On the morning of July 6, 1979, the corpses of the Wanstrath family were discovered. John and Diana Wanstrath lay dead in their den. Their son, Kevin, was dead in his crib. Each had been shot in the head. Over the protests of the Wanstraths' friends, the Harris County Medical Examiner's Office declared the deaths a double-murder suicide. The Medical Examiner concluded that Diana Wanstrath had killed her husband, her son, and then herself. That the murder weapon was not found did not dissuade the Medical Examiner's Office from the suicide theory.[3] Officer Johnny Bonds of the Houston Police Department rejected the suicide theory and pursued his own investigation. His efforts eventually led to the discovery that Markhamer Duff–Smith, Diana's brother, had hired appellant to murder the Wanstraths so he could inherit their estates.[4]

1. Appellant was previously tried and convicted for the same offense and sentenced to death; on appeal the conviction and sentence were reversed and the cause remanded for retrial. *See Janecka v. State*, 739 S.W.2d 813 (Tex.Crim.App. 1987) and later 823 S.W.2d 232 (Tex.Crim.App. 1990).

2. All article references are to the Texas Code of Criminal Procedure unless otherwise indicated.

### Sufficiency of Evidence

In a video-recorded interview with the documentary producer Lucious Norbert, appellant claimed he was forced under threat of the Mafia to commit the Wanstrath murders. In his twelfth point of error, appellant argues that having introduced the videotaped interview, the State was required, under the *Palafox* rule, to disprove duress under V.T.C.A. Penal Code, § 8.05. *Palafox v. State*, 608 S.W.2d 177 (Tex.Crim.App.1979). Because the State did not, appellant contends, we must hold the evidence insufficient.

Under the *Palafox* rule, the State was required to produce evidence positively to refute any exculpatory matter contained in a statement or confession of the accused that the State itself introduced into evidence. The doctrinal basis for this requirement was the so-called "voucher rule," by which each party was held to the verity of its own witnesses' testimony. Appellant readily acknowledges that the "voucher rule" was abolished by the Texas Rules of Criminal Evidence, effective in 1986. Thus, the doctrinal basis for the *Palafox* rule has disappeared, and with it, the rule itself. *Russeau v. State*, 785 S.W.2d 387, 390 (Tex.Crim.App. 1990); *Hernandez v. State*, 819 S.W.2d 806, 813 (Tex.Crim.App.1991), *cert. denied* 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). But appellant committed the instant offense in 1979, well before the effective date of the Rules of Criminal Evidence. He now argues that due process prohibits retroactive application of a court-made change in the law that requires (by analogy to ex post facto cases) "less proof, in amount or degree, than was required when the offense was committed[.]" *Hopt v. Utah*, 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884).

3. Diana Wanstrath's mother, Gertrude Zabolio, had been found dead with a stocking tied around her neck in 1975. The Harris County Medical Examiner's Office had also declared Gertrude's death a suicide.

4. Duff–Smith had earlier hired appellant and Paul McDonald to murder his parents, Dow and Gertrude Zabolio. By accident of fate, appellant was only able to kill Gertrude Zabolio.

It is true the Supreme Court has held that retroactive application of an unforeseeable judicial construction of a statute, or a sudden, unanticipated change in a court-made rule, may violate due process in much the same way that retroactive application of new or modified penal provisions violates the Ex Post Facto Clause. See, respectively, *Bouie v. Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) and *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). But the gravamen of this due process guarantee is "fair warning" to the defendant that his conduct was criminal at the time he engaged in it. *Bouie,* supra, at 352, 84 S.Ct. at 1701–02; *Marks,* supra, at 195 & 196, 97 S.Ct. at 994 & 995. Insofar as the Supreme Court has yet said, the Due Process Clause of the Fourteenth Amendment does not speak to the fairness, *vel non,* of retroactively lifting a burden of production of evidence from the shoulders of the State. And all the *Palafox* rule did, after all, was to impose a burden to produce evidence to refute any exculpatory matter that is contained in a confession admitted, and hence "vouched for," by the State. There is no indication the Supreme Court would regard the abandonment of this increased burden of production in any way to implicate considerations of "fair warning" about whether specific conduct is criminal.

Abandoning the *Palafox* rule does not add an element to the Legislature's definition of any offense. It does not operate retroactively to criminalize conduct that was not already punishable as a crime. It does not increase or otherwise alter criminal liability after the fact for conduct that was already criminal when committed. In short, abandoning *Palafox* in no way operates to deprive the accused of notice that his contemplated conduct would violate the law; nor does it confound him as to the punishment it would expose him to. It therefore does not call into play considerations of "fair warning." We cannot say failing to apply the *Palafox* rule in measuring sufficiency of the evidence in this appeal affects appellant's right to due process of law.

Accordingly, the evidence is not insufficient in this cause simply because the State did not present evidence to challenge the assertion in appellant's confession that he committed the instant offense under duress from the Mafia. The jury was free to regard that assertion as incredible, and thus to conclude that appellant had failed to establish duress, notwithstanding the *Palafox* rule. We overrule appellant's twelfth point of error.

In point forty-one appellant challenges the sufficiency of the evidence supporting the negative verdict to the mitigation special issue. Art. 37.0711 § 2(e). Rejecting arguments identical to those raised by appellant, we have previously held that such a review is neither necessary nor possible. *McFarland v. State,* 928 S.W.2d 482, at 497–99 (Tex. Crim.App.1996); *Lawton v. State,* 913 S.W.2d 542, 556–57 (Tex.Crim.App.1995); *Colella v. State,* 915 S.W.2d 834, at 844–45 (Tex.Crim. App.1995). Appellant's forty-first point is overruled.

In point forty-eight, appellant avers the evidence was insufficient to support the jury's finding that he probably will "commit criminal acts of violence that would constitute a continuing threat to society." Art. 37.0711 § 3(b)(2). Appellant admits that "the State offered a substantial amount of evidence regarding his criminal history and the circumstances of the offense" but argues that the State offered nothing to rebut evidence that he has been a model prisoner during his fourteen years of incarceration.

We have long recognized that "jurors are the exclusive judges of the facts." *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim. App.1994). This court does not reweigh the credibility or reassess the weight of evidence but asks only whether evidence exists to rationally support the jury's verdict. *E.g. Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560; *Chambers v. State,* 866 S.W.2d 9, 15 (Tex.Crim.App. 1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). When evidence both supports and conflicts with the verdict, we must assume that the factfinder resolved the conflict in favor of the verdict. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim. App.1993).

As appellant concedes, the State offered a "substantial" amount of evidence supporting the jury's verdict as to future dangerousness. This included evidence of sadistic brutality inflicted by appellant on his own family and evidence of his successful career as a hitman, in the course of which he killed at least four people, including an infant brutally murdered in his crib. This evidence supports the jury's verdict; it was within the jury's prerogative to reject appellant's evidence of his reformed character. Appellant's forty-eighth point of error is overruled.

### Suppression Issues

In his first, second, and third points of error, appellant contends that the trial court erred in overruling his motion to suppress various evidentiary fruits tainted by his illegal arrest. Appellant was arrested under two warrants; one alleged arson and another the murder of Keith Farmer. Neither offense was related to the Wanstrath murders. Prior to appellant's initial trial the murder warrant was ruled invalid due to untrue statements in the supporting affidavit. *Janecka v. State,* 739 S.W.2d 813, 822 (Tex. Crim.App.1987). Now appellant argues, under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), that his arson warrant should also be invalidated because of Officer Bonds' reckless and intentional misrepresentations in the probable cause affidavit supporting that warrant. Admitting that some of the statements were not totally accurate, the State denies that Bonds intentionally or recklessly misled the court or that the alleged misrepresentations are material to establish probable cause. After pretrial hearings prior to both of appellant's trials, appellant's *Franks* motions attacking the arson arrest warrant were denied. As the sole fact-finder and judge of the witnesses' credibility and weight of the evidence, the trial court is owed great deference, and its ruling will be overruled only if outside the bounds of reasonable disagreement. *Flores v. State,* 871 S.W.2d 714, 721 (Tex.Crim.App. 1993), *cert. denied,* ―― U.S. ――, 115 S.Ct. 313, 130 L.Ed.2d 276 (1994).

In *Franks* the Supreme Court held that if a defendant established by a preponderance of the evidence that a falsehood made knowingly, intentionally, or with reckless disregard for the truth was included in a probable cause affidavit, and if it was material to establish probable cause, the prevarication must be excised from the affidavit. If the abridged affidavit is insufficient to establish probable cause, the warrant must be voided and its fruits excluded from evidence. 438 U.S. at 156, 98 S.Ct. at 2676. The *Franks* Court explained, however, that the Fourth Amendment's demand for a truthful showing of probable cause does not:

> mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

438 U.S. at 164–65, 98 S.Ct. at 2681.

The probable cause affidavit at issue in this cause states in pertinent part:

> Comes Now, J.L. BONDS, a Detective employed by the Houston Police Department, hereafter styled the Affiant and complains of a felony offense, and offenses and he states upon his oath that he has good reason to believe and does believe that in Harris County, Texas, ALLEN WAYNE JANECKA who is described as a white male born November 3, 1949, who is about 6 feet tall is slender built has blond hair and green eyes, hereafter called the suspect, on or about November 23, 1978, did then and there commit the offense of Arson to-wit he did unlawfully, start a fire with the intent to damage and destroy a habitation owned by DEBRA KAY WALDHAUSER, without her effective consent and or,[sic] in the alternative, commit arson by burning the same said habitation with intent to collect insurance to be paid by REPUBLIC INSURANCE COMPANY; and that the same said: ALLEN WAYNE JANECKA did on or about November 23, 1978 in Harris County, Texas enter a habitation owned by DEBRA KAY

WALDHAUSER without her effective consent with the intent to commit theft and with the intent to commit arson and thereby commit the felony offense of Burglary.

Your Affiant's belief is supported by probable cause based upon the following good and sufficient facts:

During the first or second week of October 1980, your affiant spoke to an informant, whose name will be with held for his protection, who told your Affiant that WALTER A. WALDHAUSER had arranged for a fire to be set in his apartment so that he could collect insurance money. The informant told your Affiant that he learned this information by virtue of a spoken admission of a party to the fraud. The informant said that the same party identified the person who started the fire as 'ALLEN.'

Your Affiant believes the informant to be credible and his information reliable by virtue of the fact that the informer is a long time resident of Harris County, Texas and has no criminal history on file with the Texas Department of Public Safety, and is reputably employed. Your Affiant obtained a copy of Houston Fire Department—Arson squad report number 781552 which details an investigation following a fire at 1201 Wilcrest # 194 in Houston, Harris County, Texas, said to have been occupied by Walter and Debra Waldhauser. The report, which was verified by speaking to arson investigator Johnny Thornton, showed the fire to have had an incendiary origin and to have burned a portion of the apartment.

Your Affiant next confronted, a person he knows to be, DEBRA WALDHAUSER with the arson on October 30, 1980. Mrs. Waldhauser admitted prior knowledge that a fire would occur during the Thanksgiving holidays.

Again on November 13, 1980, your Affiant contacted DEBRA WALDHAUSER, this time armed with the information that the District Attorney's Office of Harris County would ask the 174th District Court Grand Jury to investigate the allegations of arson in said cause.

Mrs. Waldhauser consented to and did provide a statement wherein she admitted overhearing a conversation between her husband and the suspect who she knows on sight, wherein the suspect admitted having set the fire in order for WALTER WALDHAUSER to collect money from his insurer. Mrs. Waldhauser also said that a 'hope chest' which was in the apartment before the fire and was neither burned during the fire or [sic] removed thereafter was later seen by her in the possession of the suspect.

 Appellant argues the most "notable" falsehood was Bonds' fabrication of a male confidential informant. Bonds testified that he fabricated the male informant to obscure Debra Waldhauser's identity because she had already received death threats from Walt Waldhauser, Markhamer Duff–Smith, and appellant. We must defer to the trial court's acceptance of this explanation. As we understand *Franks,* a fabrication intended solely to obscure the identity of an informant for his or her protection is not the type of misrepresentation which offends the Fourth Amendment. See also *United States v. Strini,* 658 F.2d 593, 597 (8th Cir.1981) (Omission of fact that confidential informant mentioned in affidavit was also arrestee also mentioned in affidavit was not *Franks* violation). Moreover, whether attributed to Waldhauser or to the confidential informant, the veracity of the substantive information —— the information crucial to establish probable cause —— was not affected; the information attributed to the informant was essentially true. Deferring to the trial court's acceptance of Bonds' explanation that the purpose of the misrepresentation was not to deceive the trial court, and noting that the crucial information was in fact true, we think that this is not a misrepresentation of the type contemplated in *Franks.* The deception alleged was not material to the establishment of probable cause. See also *United States v. Causey,* 9 F.3d 1341, 1343 (7th Cir.1993), *cert. denied,* 511 U.S. 1024, 114 S.Ct. 1412, 128 L.Ed.2d 83 (1994) (pseudonym of informant was not misrepresentation of material fact); *United States v. Clutter,* 914 F.2d 775, 780 (6th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991) (that con-

fidential informant was in fact affiant informant was not *Franks* misrepresentation).

Appellant also complains that Bonds lied in representing that Waldhauser had not consented to the offense (arson) upon which the arrest warrant was issued. It is not true that Bonds misrepresented Waldhauser's involvement in the conspiracy to defraud the insurance company. The affidavit clearly states that Waldhauser "admitted to prior knowledge that a fire would occur during the Thanksgiving holidays."

■ Appellant further complains of Bonds' misrepresentation of the dates on which he gained his intelligence from Waldhauser and the informant. Bonds readily admits he inadvertently confused the dates, i.e., that what he claimed occurred in October in fact occurred in November. Appellant does not explain, and it is not obvious to us, how these misstatements impacted the issue of probable cause. Finding they had no perceptible effect on the information necessary to establish probable cause, we must again hold that the misrepresentations were immaterial and thus, not within the purview of *Franks*.

Appellant also complains about Bonds' representation that the confidential informant had no criminal history. As already discussed, there was no confidential informant; therefore, in so far as Bonds' fabrication of the confidential informant has been addressed, the informant's criminal history, as part of that fabrication, has also been addressed. In so far as appellant argues that Bonds misrepresented Waldhauser's criminal history, we must hold that it was neither reckless nor material to the probable cause determination. Waldhauser's alleged conviction for driving while intoxicated is not a crime of moral turpitude impacting on her credibility; therefore, it is not the type of offense which must necessarily be revealed on a probable cause affidavit. Likewise Waldhauser's participation in the arson, the offense for which the warrant was issued, does not diminish her credibility. To the contrary, we have held that "[a]ny statement by a source which includes an admission of wrongdoing" in the offense alleged is indicative of credibility. *Janecka*, 739 S.W.2d at 824. Moreover, Bonds' affidavit does not

deny that the sources of the information are participants in the offense alleged. In fact, all of the substantive information is attributed to participants in the offense. Even the fabricated informant attributes his knowledge to a participant in the offense. Thus, we must agree with the trial court's ruling that Bonds' assertion that the fabricated confidential informant had no criminal history was not a material misrepresentation.

■ According to appellant, Bonds also misrepresented that Waldhauser "did provide [on November 13, 1979] a statement wherein she admitted overhearing a conversation between her husband and the suspect who [sic] she knows on sight, wherein the suspect admitted having set the fire." Appellant points out her statement of November 13, 1980, does not contain these assertions. When this issue was relitigated before the jury, Bonds admitted that what he represented in the probable cause affidavit was not literally in Waldhauser's statement. But he added that in their conversations, she had in fact admitted overhearing conversations between her husband and appellant in which appellant had acknowledged his participation in the arson. The trial court ruled that Bonds' statements did not constitute a *Franks* misrepresentation of Waldhauser's statement of November 13, 1980.

Our own review of that statement leaves us uncertain as to whether Bonds actually misrepresented its contents. As the trial court pointed out at the *Franks* hearings, Waldhauser related in her affidavit that her husband and appellant had conversations during which they planned the arson; that appellant was given a key to the apartment for the purpose of setting fire to the apartment; that appellant had been given instructions to remove some valuables before setting the fire; and that after the fire appellant himself returned the valuables to the Waldhausers. And, the only conversation in Waldhauser's affidavit to which Bonds could reasonably have referred in his own statement was Waldhauser's assertion that:

When Walt gave Allen the key, he told Allen to come by and set the fire late at night so no one would notice when stuff

was taken out. Walt also told Allen that he did not care how the fire was set just so long as it was a total loss for his income tax records.

From these facts, Officer Bonds' statements cannot unequivocally be called a misrepresentation. Moreover, even if Bonds misrepresented anything, it was not a material misrepresentation. Any misrepresentation was only with regard to how the information was gained, whether via conversation or via the affidavit. The substantive information was true.

As the information material to the establishment of probable cause in Officer Bonds' affidavit was substantially correct, there was no misrepresentation within the meaning of *Franks.* We cannot hold that the trial court abused its discretion. Appellant's first, second, and third points of error are overruled.[5]

In point of error seven, appellant argues that because Officer Bonds perjured himself in the probable cause affidavit supporting the arson arrest warrant, the trial court erred in failing to suppress the fruits of the illegal arrest warrant as mandated by Article 38.23. Article 38.23, our statutory exclusionary rule, requires the suppression of evidence "obtained by an officer ... in violation of any" law. Evidence that is not "obtained" in violation of the law, however, is not subject to exclusion under Article 38.23. Cf. *Johnson v. State,* 871 S.W.2d 744, 751 (Tex.Crim.App. 1994) (application of attenuation of taint doctrine not inconsistent with Article 38.23; when taint is attenuated, evidence is not "obtained" in violation of law). We have already concluded for purposes of resolving appellant's *Franks* claims that the falsehoods in Bonds' arson arrest warrant affidavit were not material to establishing probable cause. Because the validity of the arson arrest warrant was not contingent upon Bonds' falsehoods, we hold that any evidence seized pursuant to the warrant was not "obtained" as a consequence of his perjury (if any). It therefore need not have been excluded under Article 38.23. Point of error seven is overruled.

Appellant's fourth point of error alleges the trial court reversibly erred in admitting his 1980 written and oral confessions into evidence because they were obtained in violation of his Sixth Amendment right to counsel. The State counters that because this issue was addressed in appellant's first appeal, the law-of-the-case doctrine prevents appellant from again raising the issue. Appellant counters that the law-of-the-case doctrine does not govern because the law upon which our initial resolution of the issue was decided has changed. Appellant is correct.

In appellant's initial appeal, we conflated the distinct issues of Fifth and Sixth Amendment rights to counsel, and held that appellant's Sixth Amendment right to counsel was waived along with his Fifth Amendment right to counsel. *Janecka,* 739 S.W.2d at 830. Since then, in *Upton v. State,* 853 S.W.2d 548, 553 (Tex.Crim.App.1993), we have said:

> Although the United States Supreme Court has not so expressly held, we held in *Holloway v. State,* 780 S.W.2d 787 (Tex. Crim.App.1989), as a matter of federal constitutional law, that after the Sixth Amendment right to counsel attaches and the accused is represented by counsel, the police may initiate interrogation only through notice to defense counsel, and a defendant's unilateral waiver of his Sixth Amendment right to counsel is invalid under these circumstances. *Holloway,* 780 S.W.2d at 795.

Our understanding of the law having changed, the law-of-the-case doctrine is inapplicable to appellant's question. *Ex parte Granger,* 850 S.W.2d 513, 517 (Tex.Crim.App. 1993).

The State alternatively argues appellant's Sixth Amendment right to counsel had not attached as to the murder of Kevin Wanstrath, the offense to which appellant confessed and now stands convicted. Appellant counters under the law-of-the-case doctrine

---

5. Pursuant to Article 44.01(c), the State avers that the trial court erred in ruling that the arrest warrant for the murder of Keith Farmer was not supported by a showing of probable cause. Appellant was arrested under the authority of both the murder and arson warrants. Having determined that the trial court did not err in its determination that the arson warrant was supported by probable cause, we need not address the State's counter-points.

that the attachment issue should not be reconsidered since we held at his initial appeal that his Sixth Amendment right to counsel had attached. As already noted, since appellant's initial appeal, we have come to a different understanding of the applicable law. Therefore, application of the law-of-the-case doctrine would be inappropriate. *Ex parte Granger*, 850 S.W.2d at 517.

In *McNeil v. Wisconsin*, the Supreme Court unequivocally held that the Sixth Amendment right to counsel is offense-specific. 501 U.S. 171, 175–76, 111 S.Ct. 2204, 2207–08, 115 L.Ed.2d 158, 166–67 (1991). The Sixth Amendment right to counsel cannot be invoked against potential future prosecutions which have not yet commenced. *Id.* It attaches only at or after the initiation of adversary judicial criminal proceedings in the offense for which the right is claimed. *Id.*

When appellant made the confessions of which he complains, he had not yet been charged with Kevin Wanstrath's murder. Although he was informed that the Wanstrath murders were being investigated and that he was a suspect in the murders, appellant was not charged with or under arrest for the murders. He was in custody on the arson warrant. In view of these facts and the holding of *McNeil*, appellant's Sixth Amendment right to counsel had clearly not yet attached as to the Wanstrath murders. His Sixth Amendment right to counsel not having yet attached as to Kevin Wanstrath's murder, appellant cannot claim his statements regarding the murder were obtained in violation of his Sixth Amendment right to counsel. Appellant's fourth point of error is overruled.

In his fifth point of error appellant makes essentially the same contentions as in his fourth, except that he predicates his argument on Article I, § 10 of the Texas Constitution. However, he presents no independent argument or authority supporting his contentions. We therefore consider this point inadequately briefed, and thus, not properly presented for review. See *Johnson v. State*, 853 S.W.2d 527, at 533 (Tex.Crim.App.1992). Point of error five is overruled.

In his sixth point of error, appellant alleges his 1980 confession to the Wanstrath murders must be suppressed as violative of his Fifth Amendment right to counsel. This issue was thoroughly addressed in appellant's initial appeal. Because there have been no changes of pertinent law or facts, the law-of-the-case doctrine applies. Thus, we must defer to our previous holding that appellant effectively waived his Fifth Amendment right of counsel. *Janecka*, 739 S.W.2d at 825–831. Point of error six is overruled.

▆▆▆▆ In his eleventh point of error appellant contends that the trial court erred in admitting into evidence his videotaped interview with Dr. Norbert Lucious. Specifically, appellant complains his statements to Lucious were made under the inducement of promises which rendered them involuntary, and were therefore inadmissible under Article 38.21. Appellant alleges that Lucious promised the recorded conversations would remain confidential and would not be released for use against him. Emphasizing that nothing in the record supports appellant's argument that Lucious was a State agent, we note that appellant's argument fails even under the traditional analysis for testing the reliability of statements made under inducement of a promise.

To render a confession involuntary for purposes of Article 38.21, promises must be positive, i.e., of some benefit to the declarant, made or sanctioned by a person in authority, and of such a character as would likely influence the accused to speak untruthfully. *Long v. State*, 823 S.W.2d 259, 277 (Tex. Crim.App.1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Fisher v. State*, 379 S.W.2d 900 (Tex.Crim.App. 1964). The facts here do not satisfy any of these requisites. Lucious was not a person in authority. His promise cannot reasonably be characterized as conferring any sort of benefit appellant did not already enjoy, since appellant could simply have chosen not to speak to Lucious at all. Moreover, Lucious' alleged promises were not of the type likely to make the appellant believe that his condition would be bettered by making a confession, even a false confession. There being no circumstances in the record to suggest appellant's statement to Lucious was anything but voluntary, we cannot conclude the trial court

abused its discretion in failing to suppress it. Point of error eleven is overruled.

### Other Pre-trial Motions

In his eighteenth point of error, appellant contends the trial court erred in overruling his motion to change venue. Appellant properly moved to change venue on grounds of prejudicial pre-trial publicity. Article 31.03 § (a)1. When the State filed its response, appellant argued that the controverting affidavits were inadequate because they did not state the affiants were residents of Harris county and because they were improperly notarized. Appellant refused to participate in any hearing concerning the motion to change venue, insisting that he was entitled to the transfer as a matter of law. Thus, no hearing was held.

Appellant confuses the requirements Article 31.03 places on him with the requirements Article 31.04 places on the State. By its terms Article 31.03(a) requires a defendant seeking a change of venue to file a written motion supported by affidavits of at least two credible residents of the county, asserting the defendant cannot receive a fair trial in that county due to either prejudice or a combination of influential persons against him. *Lundstrom v. State,* 742 S.W.2d 279, 281–282 (Tex.Crim.App.1986). If the defendant's motion is proper on its face, he is entitled to a change of venue as a matter of law, unless the State properly challenges the defendant's motion. As we explained in *McManus v. State,* 591 S.W.2d 505, 516 (Tex.Crim.App.1980):

" ... if no controverting affidavit is filed by the State, the defendant is entitled to a change of venue *as a matter of law.* The reason that the defendant is entitled to this change as a matter of law is because in the absence of controverting evidence, there is no issue of *fact* to be resolved. When there is no issue of fact to be determined by the trial court, and no place for its exercise of discretion, it must grant the defendant's motion. This is the reason it is stated that in this situation, a defendant is entitled to such a change as a matter of law."

(Citations omitted; emphasis in original). Article 31.04 dictates the pleading requirements for the State to establish a factual dispute in need of resolution. *Burks v. State,* 876 S.W.2d 877, 890 (Tex.Crim.App.1994). Article 31.04 requires controverting affidavits to assert the defendant's affiants are not credible and/or that their knowledge is insufficient. If the controverting affidavit fails on its face to meet these two requirements, appellant is entitled to a change of venue as a matter of law. *Lundstrom,* 742 S.W.2d at 286. Because appellant does not allege the controverting affidavits are flawed in either of these regards, the trial court did not err in refusing to grant appellant's motion to change venue. Appellant's eighteenth point of error is overruled.

In point of error nineteen, appellant also contends the trial court erred in denying his motion for change of venue on grounds that a dangerous combination existed against him. Article 31.03 § (a)2. Upon reviewing the record of the hearing conducted on these grounds, we find no evidence supporting his allegations. We cannot say the trial court abused its discretion.[6] Appellant's nineteenth point is overruled.

---

6. Appellant argues that the trial court abused its discretion in limiting his examination of various witnesses. Counsel was apparently attempting to show that the investigation of this case was conducted in such a way as to evince an obvious conspiracy to convict him irrespective of his actual innocence or guilt. The trial court did curtail much of appellant's questioning of various police witnesses and forensic analysts as to the particulars of their investigation. The trial court apparently believed such detailed questions were not relevant to the broader issue of whether a conspiracy existed, constituted an improper attempt by appellant to obtain general discovery of the State's case, and were in any event unnecessarily prolonging the hearing. Appellant contends he was entitled to go into such detail, citing only a case styled *Finks v. State.* We cannot find such a case in the Southwestern Reporter at the volume and page appellant cites, however, and are not inclined to seek it out. In any event, appellant's nineteenth point of error complains that the trial court erred in failing to find there was a dangerous combination, *not* that the trial court erred in limiting his ability to examine witnesses at the hearing to establish same. Because appellant did not show as a matter of law that a dangerous combination existed, we cannot fault the trial court for failing to

According to appellant's twentieth point of error, the trial court erred in denying his motion to stay the execution of Markhamer Duff–Smith. The State correctly argues that the trial court appropriately denied a motion which it has no jurisdiction to entertain. *State ex rel. Holmes. v. Honorable Court of Appeals,* 885 S.W.2d 389, 395–96 (Tex.Crim. App.1994) (citing *State ex rel. Wilson v. Briggs,* 171 Tex.Cr.R. 479, 351 S.W.2d 892, 896 (1961). Moreover, this issue has already been disposed of against appellant in our own denial of his Petition to stay Duff–Smith's execution. *Ex parte Allen Wayne Janecka,* No. 24,976–01 (Tex.Crim.App. June 28, 1993). Point of error twenty is overruled.

■ In point of error twenty-one appellant claims the trial court erred in denying his motion for continuance. He argues he did not have adequate time to interview witnesses, to hire experts, and to secure the appearance of key witnesses outside of the jurisdiction of this state. The trial court's ruling on a motion for continuance is reviewed for abuse of its discretion. *Heiselbetz v. State,* 906 S.W.2d 500, (Tex.Crim.App. 1995); *Cooks v. State,* 844 S.W.2d 697, 725 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); Article 29.03 (criminal action *may* be continued upon sufficient cause shown in motion); Article 29.06(6) (sufficiency of a motion for continuance shall be addressed to "sound discretion" of court and "shall not be granted as matter of right"). To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion. *Heiselbetz,* 906 S.W.2d at 511. Where denial of a continuance has resulted in demonstrated prejudice, we have not hesitated to declare an abuse of discretion. *Rosales v. State,* 841 S.W.2d 368, 372 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

Appellant asserts he was unable to adequately prepare his defense. However, he does not establish any specific prejudice to his cause arising from the trial court's failure to grant his motion to continue the trial. In *Hernandez,* appointed counsel had less time

than appellant to prepare for trial. We nevertheless held:

> Although this is a relatively short time for preparation in a [capital murder trial], no specific, serious matter has been raised by the appellant and the record does not otherwise show that the appellant's defense was prejudiced by counsel not having more time to prepare for trial.

643 S.W.2d at 399–400. Like the defendant in *Hernandez,* appellant does not establish any specific prejudice. He does not allege unfair surprise or an inability to effectively cross-examine any of the State's witnesses or that crucial testimony would have been given by potential witnesses. That counsel merely desired more time to prepare does not alone establish an abuse of discretion. Appellant's twenty-first point of error is overruled.

### Article 39.02 Depositions

■ In point of error twenty-two, twenty-three and twenty-four appellant alleges that the trial court erred in denying his motions to depose various witnesses. Article 39.02. Appellant asserts he was denied his right to effective counsel and due process. A deposition under Article 39.02 is of such an extraordinary nature that little jurisprudence exists to govern its application. Article 39.02 states:

> Depositions of witnesses may be taken by the defendant. When the defendant desires to take the deposition of a witness, he shall, by himself or counsel, file with the clerk of the court in which the case is pending *an affidavit stating facts necessary to constitute good reason for taking the same,* and application to take the same. Provided that upon filing of such application, and after notice to the attorney for the State, the courts shall hear the application and determine if good reason exists for taking the deposition. Such determination shall be based on the facts made known at the hearing and the court, in its judgment, shall grant or deny the application of such facts.[7]

rule in his favor. Thus we overrule his nineteenth point of error, at least as framed.

7. All emphasis supplied unless otherwise indicated.

Thus, a defendant may take the deposition of a witness only upon a showing of good reason. *May v. State*, 738 S.W.2d 261, 273 (Tex.Crim.App.1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987). A trial court has broad discretion in ruling on an Article 39.02 motion and will be reversed only upon abuse of discretion. *Id.*

In point of error twenty-two, appellant alleges reversible error in the trial court's denial of his application to depose Rick Nelson. In his motion to depose Nelson appellant alleged that because Nelson had written a book on the Wanstrath murders, he possessed knowledge about the murders which would "facilitate and provide defendant with information which [was] common knowledge to the District Attorney's office," and that Nelson possessed "information by way of tapes and or written material that may be inconsistent with the prior testimony of witnesses. This information could be used to impeach those witness [sic] when they testified." Nelson appeared to be available during appellant's investigation of the case and could have been subpoenaed for trial. We cannot hold that the trial court abused its discretion in denying appellant's application to depose Nelson. Point of error twenty-two is overruled.

Appellant's case for the deposition of Thomas Welu likewise falls short of establishing good reason. At the time of the murders, Dr. Welu was a forensic psychologist employed by the Harris County Medical Examiner. He performed "psychological autopsies" with a specialization in suicide. From Nelson's book, appellant had reason to believe that Welu, who had conducted a psychological autopsy of the Wanstraths, believed that Diana Wanstrath had killed her husband and son and then committed suicide. This was reflected in the Harris County Medical Examiner's initial ruling that the Wanstrath murders were a double-murder suicide. However, during trial appellant himself introduced evidence that Welu had abandoned this exculpatory theory of the offense after Janecka's confession. This was affirmed in the letter attached to appellant's application to depose him in which Welu indicates that, based on Janecka's confession, he changed his mind about the Wanstrath

murders. The record establishes that Welu's exculpatory theory of the offense was introduced at trial through the testimony of Dr. Jackimczyk, the Harris County Medical Examiner.

Jackimczyk testified about his office's investigation of the case, including Welu's role. Jackimczyk testified about his office's initial conclusion that Diana Wanstrath had murdered her husband and child and then killed herself, but that his and Dr. Welu's opinion had changed after Janecka confessed. Jackimczyk testified that, skeptical of Janecka's confession, he personally re-opened the investigation to assure himself that newly discovered evidence supported Janecka's confession.

Appellant also alleged that Welu had important information about the investigation of the case, but Welu's letter refutes this. Welu's letter confirms his opinion that an unethical investigation was conducted by Bonds, but Welu did not assert any knowledge of facts supporting his opinion. To the contrary, Welu's letter indicates that his opinion was based on rumor and conjecture, not on facts. We cannot hold that the trial court abused its discretion in denying appellant's application to depose Welu. Again appellant has failed to show good reason. His twenty-third point of error is overruled.

Appellant argues the deposition of Norbert Lucious was essential to establish that their video-taped interview was involuntary. According to appellant's motion, when the interview was made, Lucious promised its contents would never be revealed or used against appellant. The affidavit of appellant's counsel alleges he unsuccessfully attempted to contact Lucious, who was believed to be in Russia. Lucious' co-producer in the interview testified that they interviewed appellant as part of a wholly private venture, and that as the cameraman he was present during the entire interview.

We have already held that appellant's videotaped confession was not rendered involuntary on account of any promise by Lucious that its content would remain confidential. Appellant did not establish that Lucious possessed any information critical to any sig-

nificant factor at trial, or that he had any information exclusively within his knowledge. Thus appellant failed to establish good reason to depose him. Moreover, it is unclear that Lucious' location was ever determined. Under these circumstances, we cannot say the trial court abused its discretion in overruling appellant's motion for deposition. His twenty-fourth point of error is overruled.

### Jury Selection

■ In points of error twenty-five through forty, appellant contends the trial court reversibly erred when it limited his voir dire examination of sixteen veniremembers. In all of these points of error appellant asserts he was denied the opportunity to ask proper questions and was thereby denied the right to intelligently exercise his peremptory challenges.[8] The State responds that in failing to exhaust his peremptory challenges, appellant has not preserved his objections for review.

In *Gardner v. State*, 733 S.W.2d 195, 212 (Tex.Crim.App.1987), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 848, 102 L.Ed.2d 979 (1989), the defendant, appealing a sentence of death, argued that the trial court erred by improperly limiting his voir dire examination, thereby hindering his ability to intelligently exercise his challenges for cause and peremptory challenges. Noting that Gardner had not exhausted his peremptory strikes, we held that in as much as appellant had not exhausted his peremptory strikes and was, therefore, not forced to accept an objectionable juror, the error alleged was rendered harmless, and thus, error, if any, was not preserved for review. *Id.* The holding of *Gardner* is rooted in *Emanus v. State*, 526 S.W.2d 806, 808 (Tex.Crim.App.1975), in which we explained:

> There are two tests for harmless error in connection with voir dire proceedings. The test for ascertaining the harmfulness of an error in denying a proper challenge for cause is to look to the exercise of a defendant's peremptory challenges. If there is no showing that he was forced to

accept an objectionable juror because he had exhausted his peremptory challenges, an error in denying a challenge for cause is harmless. *Ward v. State*, 505 S.W.2d 832 (Tex.Crim.App.1974). An error in the unreasonable restriction of a defendant's voir dire examination of the prospective jurors is quite another matter. Such examination is for the purpose of enabling counsel intelligently to exercise his peremptory challenges and a requirement that he exercise all his peremptory challenges would ordinarily make no sense. *Burkett v. State*, 516 S.W.2d 147 (Tex.Crim.App.1974); *Mathis v. State*, 167 Tex.Cr.R. 627, 322 S.W.2d 629 (1959). The test for ascertaining harm in such cases is whether the trial judge's limitation of the voir dire examination amounted to an abuse of discretion, thus depriving appellant of a valuable right. *Burkett v. State, supra; Grizzell v. State*, 164 Tex.Cr.R. 362, 298 S.W.2d 816 (Tex.Crim.App.1957) (opinion on motion for rehearing); *Smith v. State*, 513 S.W.2d 823 (Tex.Crim.App.1974); *Barrett v. State*, 516 S.W.2d 181 (Tex.Crim.App.1974) (dissenting opinion). Our research has revealed no cases resulting in reversal where the limitation of the voir dire examination complained of pertained to only one juror. In the cases we have found which were reversed for this reason, the trial court has refused the asking of certain questions or otherwise acted with reference to the jury panel as a whole. Thus, counsel's inability intelligently to exercise his peremptory challenges stretched to the entire panel of veniremen. The case at bar presents a situation in which counsel's voir dire examination was limited as to one prospective juror only. The fact, conceded during oral argument, that appellant did not exercise all his peremptory challenges, is relevant in this situation and mitigates the harmfulness of any error.

See also, *Collins v. State*, 548 S.W.2d 368, 371–372 (Tex.Crim.App.1976), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1611, 51 L.Ed.2d 811

---

8. In points of error twenty-five through thirty-six, appellant asserts that he was not allowed to ask divers proper questions of various veniremembers, and though points of error thirty-seven through forty are phrased in terms of restricted voir dire, they are also arguments that proper questions were not allowed.

(1975); *Gardner v. State,* 730 S.W.2d 675, 690 (Tex.Crim.App.1987).[9]

In effect *Emanus* and its progeny stand for the proposition that in order to establish he is harmed by the denial of intelligent use of a peremptory challenge as to a single veniremember, a defendant must, in effect, blindly exercise a peremptory against the veniremember to prevent him from sitting on the jury.[10] Only if this prophylactic use of the peremptory challenge subsequently results in the deprivation of a peremptory challenge he would have used later on can we say the error in denying him the intelligent use of the peremptory challenge was harmful. Today we reaffirm the rule of *Emanus* and its progeny. Moreover, if having left-over peremptory challenges "mitigates the harmfulness" of failing to allow a proper question to a single veniremember, then logically it must also operate to mitigate the harm of failing to allow a proper question to multiple veniremembers in a capital case. In either event the remaining peremptory challenge or challenges apparently signify that forcing appellant to exercise some of his peremptories "blindly" did not cause him to waste needed peremptories before the jury was selected. Because appellant did not use all of his peremptory challenges, we overrule his twenty-fifth through fortieth points of error.

In point of error eight, appellant alleges the trial court erred in failing to instruct the jury in accordance with Article 38.22 §§ 6 and 7. Article 38.22 § 6 in pertinent part provides that the voluntariness of a confession may be put to the jury if the evidence raises the issue, and that the jury shall be instructed that unless it believes beyond a reasonable doubt that the statement was voluntary, it shall not consider the statement for any purpose. Article 38.22 § 7 adds that the trial judge shall instruct the jury "generally" on the law pertaining to such statements. Appellant alleges, without citation to the record, that there "was a great deal of evidence" which raised a question regarding the voluntariness of his oral and written confessions made in November and December of 1980. We disagree.

The evidence establishes that appellant understood his rights and knowingly and voluntarily waived them. According to the record, appellant initiated the conversation which lead to the statements at issue, and when reminded of his rights, appellant stated that he had been in prison before and understood them. Similarly, when reminded that he was represented by counsel, and that counsel could be notified, appellant asserted that he

**9.** It is true that in *Nunfio v. State,* 808 S.W.2d 482 (Tex.Crim.App.1991), we held that refusing to allow a "proper" question during voir dire amounted to reversible error, without an inquiry into harm under Tex.R.App. Pro 81(b)(2). But we have long held that denial of intelligent use of a peremptory challenge in a capital case may, under certain circumstances, prove harmless. See *Gardner v. State,* 730 S.W.2d at 690. *Nunfio* was a non-capital case in which counsel was not permitted to pose a certain "proper" question to the entire venire. In a capital case, however, veniremembers are ordinarily examined individually, one at a time, out of the presence of the rest of the venire. Disallowing a proper question thus does not effect intelligent use of all peremptory challenges, as in a non-capital case. Indeed, this is the very distinction we noted in *Emanus,* and *Nunfio* did not purport to overrule *Emanus.* We do not think *Nunfio* controls in the instant cause.

Judge Overstreet cites three cases for the proposition that even in a capital case denial of a "proper" question during voir dire constitutes reversible error. See *Cockrum v. State,* 758 S.W.2d 577, 584 (Tex.Cr.App.1988); *Allridge v. State,* 762 S.W.2d 146, 162–63 (Tex.Cr.App. 1988); *Caldwell v. State,* 818 S.W.2d 790, 793–94 (Tex.Cr.App.1991). In none of these cases did the Court find the defendant was denied a "proper" question, however, so any holding as to the necessity of a showing of harm was dicta. Moreover, the cases that these cases in turn cite, *viz:* *Smith v. State,* 703 S.W.2d 641 (Tex.Cr.App. 1985), and *Powell v. State,* 631 S.W.2d 169 (Tex. Cr.App.1982), were themselves distinguished in *Gardner v. State,* 730 S.W.2d at 690 & n. 9, one of the cases we rely upon today.

**10.** We have made it clear that "it can no longer be said that one purpose of peremptory challenges under Texas law is to correct errors of the trial court in failing to grant valid challenges for cause." *Martinez v. State,* 763 S.W.2d 413, 415, n. 2 (Tex.Crim.App.1988). The same is apparently not true when it comes to error in the denial of the intelligent exercise of a peremptory challenge. Consistent with *Emanus,* a defendant must "blindly" exercise his peremptory challenge when he is deprived of the opportunity to ask a proper question to correct the trial court's mistake.

wanted to speak without a lawyer present. Appellant does not allege any police abuse, brutality, or coercion, but merely contends that the jury "could have" disbelieved the officers and "could have interpreted" some of the police's statements as coercive. Absent some positive evidence appellant's statements were coerced, we cannot say the trial court abused its discretion in failing to give the requested instruction. Appellant's eighth point of error is overruled.

In his ninth point of error, appellant avers the trial court erred in failing to put before the jury the issue of Bonds' perjury in the probable cause affidavit. Appellant invokes Article 38.23, but cites no other authority supporting his argument. We have already concluded as a matter of law that none of appellant's statements was "obtained" in violation of the perjury statute for purposes of the statutory exclusionary rule. *See ante*, at 465. Because there was no issue for the jury to rule upon, the trial court did not abuse its discretion in failing to submit that issue to the jury. We overrule appellant's ninth point of error.

■ In his tenth point of error appellant alleges the trial court erred in failing to submit to the jury the question of whether Karen Holder was his common-law wife. Appellant does not aver, nor does the record reveal, that Holder ever sought to assert a spousal privilege. *See* Tex.R.Crim. Evid. 504. Apparently, appellant's claim is made under the mistaken impression that the spousal privilege entitled him to prevent Holder from testifying. This was true at appellant's initial trial, during which Article 38.11 defined the spousal privilege, but the privilege was modified when it was re-codified as Rule 504 of the Texas Rules of Criminal Evidence.[11] Under Rule 504, the absolute disqualification of one spouse from testifying against another under Article 38.11 was replaced with the privilege not to

be called as a witness. *Johnson v. State,* 803 S.W.2d 272, 281 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). Under Rule 504 only the spouse called to testify may assert the privilege, and thus, even if she were appellant's spouse, he could not prevent Holder from testifying. *Id.* at 281. During appellant's retrial Holder did not assert a spousal privilege. To the contrary, she denied ever having been appellant's spouse. As Holder did not even attempt to assert a Rule 504 privilege, the trial court did not err in refusing to put the issue to the jury. Appellant's tenth point of error is overruled.[12]

### Testimony at Sentencing

■ The record shows that Ted Poe, a sitting criminal district court judge in Harris County, was called by the State during the punishment phase of appellant's trial. In point fourteen appellant avers the trial court erred in admitting Poe's testimony "because much of the testimony was irrelevant." In point fifteen, appellant argues the trial court erred in admitting Poe's testimony "because such testimony was unduly prejudicial to appellant." In point sixteen appellant alleges the trial court erred in permitting Poe's testimony because it did not seek to rebut any issue raised by the defense. Appellant argues these points together.

Without supporting authority, appellant argues the appearance of a sitting judge as a prosecution witness is inherently prejudicial and reversible error. We disagree. While the Texas Rules of Criminal Evidence explicitly make the presiding judge an incompetent witness at any trial over which he is presiding, Tex.R.Crim. Evid. 605, they do not preclude a judge from testifying at any other trial, should he have relevant information to contribute. In fact, the Rules generally fa-

---

**11.** There is no question that Rule 504 controls appellant's retrial. *See Boyle v. State,* 820 S.W.2d 122, 144 (Tex.Crim.App.1989), *cert. denied,* 503 U.S. 921, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992)(It is generally recognized that procedural statutes control litigation from their effective dates and apply to both pending and future actions; in the absence of an express intent to

the contrary, a procedural statute controls litigation from its effective date).

**12.** The State alternatively asserts that the trial court erred in holding that Holder was ever appellant's spouse. Under our resolution of this point of error it is unnecessary for us to reach the State's counterpoint.

vor admission of all relevant evidence. *Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App.1991) (Opinion on rehearing). If the probative value of a non-presiding judge's particular testimony in a particular case is substantially outweighed by the danger of unfair prejudice, then like any other evidence it can be challenged under Tex. R.Crim. Evid. 403. But we decline to rule that as a matter of law a judge's testimony is more prejudicial than probative.

Appellant next contends that Judge Poe's testimony was irrelevant and, on the particular facts of this case, more prejudicial than probative. During the punishment phase of trial, appellant argued that to sentence him to death would be grossly disproportionate in view of the fact that McDonald and Waldhauser, two accomplices, were, by the time of appellant's retrial, free men. Poe, who had been the Assistant District Attorney in part responsible for the prosecution of McDonald and Waldhauser, was called by the State to explain the relatively lenient treatment of the accomplices. Inasmuch as it was responsive to appellant's posture at the punishment phase, Poe's testimony explaining the disposition of the cases against appellant's accomplices was relevant, and we cannot say the trial court erred to find the probative value was not substantially outweighed by the potential for unfair prejudice.

■ But, as appellant points out, Poe's testimony exceeded the scope of rebuttal testimony. According to the record, the following occurred during the State's direct examination of Poe:

Q And [sic] someone who lived with this case for as long as you did, can you tell the jury how this case affected you?

MR. BRINK: Object, Your Honor, there's no relevance to the case. He has not helped prosecute the case.

THE COURT: Overruled.

A What's your question, Mr. Rosenthal?

Q (By Mr. Rosenthal) Did this case affect you, personally?

A Yes, sir.

Q How did it do that?

A It was a child that was involved in this, a child born the same year as my son. I

have watched my son grow; he's 15. Kevin Wanstrath never grew up.

Anybody that came in contact with this case, it forever changed our lives because it was Kevin.

Q There were a number of photographs introduced in the trial of Allen Janecka, the first trial that you had. Did you keep any of those photographs?

A Yes, sir, I have a photograph taken of Kevin shortly before his death; that's always been in my office when I was in the D.A.'s office and then as a Judge. It's in my office now, yes, sir.

This portion of Poe's testimony was clearly beyond the scope of rebuttal and had no relevance to any issues at trial. The trial court erred in permitting Poe to testify about the impact of Kevin Wanstrath's murder upon his life. The error, however, was not reversible.

The evidence established that appellant shot Kevin Wanstrath through the head as the infant lay in his crib. Only appellant out of several accomplices was willing to kill an infant. The evidence further established that appellant had committed at least four murders for hire. There was further evidence of appellant's sadistic brutality toward those close to him, and of murderous threats made against various people. In short, there was more than ample evidence to establish appellant acted deliberately, and that he would constitute a continuing threat of violence to society. Article 37.0711 § 3(b). Although the parties addressed Judge Poe's testimony during final argument at the punishment phase, no specific mention was made of the above, erroneously admitted aspects. The State made no attempt to use Poe's erroneous testimony to persuade the jury to answer the mitigation special issue, Article 37.0711 § 3(e), in such a way as to result in imposition of the death penalty. We are satisfied beyond a reasonable doubt that the error made no contribution to the jury's disposition of the special issues. Tex.R.App. Proc. 81(b)(2). Cf. *Smith v. State,* 919 S.W.2d 96, 102–03 (Tex.Crim.App.1996) (Plurality opinion) (error in admitting victim impact evidence at punishment phase was

**474**

harmless beyond a reasonable doubt). Accordingly, we overrule appellant's fourteenth, fifteenth and sixteenth points of error.

In his seventeenth point of error appellant complains the trial court erred in allowing Michael Chavis to testify during the punishment phase of trial about the effect of Kevin Wanstrath's murder on his life. At the conclusion of the State's direct examination of Chavis at the punishment phase of trial the following occurred:

Q. Okay. Has Allen Wayne Janecka's killing of Kevin Wanstrath, has that had any effect on you?

MR. PETTIT: Your Honor, I object to the question. It's irrelevant.

THE COURT: Overruled.

A. Yes, it has. Even though I was hurt back in 1987, October the 26th of '87, the 26th of this month made six years. I was paralyzed for the rest of my life and then in August 3rd of this year I lost my leg. That has hurt me a lot, but it's nothing compared—

MR. PETTIT: I object to the relevancy of this.

THE COURT: Overruled.

A. It's nothing compared to the hurt of the sleepless nights and the dreary days of just knowing if I could have known Allen a lot better then maybe I could have done something to have prevented what he has done.

MR. RAMZEL: No further questions.

We agree with appellant that this testimony, like that of Judge Poe above, was irrelevant and should not have been admitted over objection. But we conclude that, like Poe's testimony, it was harmless beyond a reasonable doubt. There was ample, compelling evidence of deliberateness and of future dangerousness. The State made no attempt to use Chavis' testimony to rhetorical effect to argue in its punishment summation that the jury should answer the mitigation special issue 'no.' We therefore likewise overrule appellant's seventeenth point of error as well.

*Closing Arguments at Guilt–Innocence*

 In point of error thirteen, appellant alleges the State made various improper and inflammatory statements during its closing arguments at the guilt-innocence phase of trial. Appellant concedes that no contemporaneous objections were made to the State's remarks. Without timely and specific objections, the question of allegedly improper closing arguments is not preserved for review unless manifestly improper. *Hughes v. State*, 897 S.W.2d 285, 304 (Tex.Crim.App. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995). Our review of the record does not reveal any manifestly improper arguments. Appellant's thirteenth point of error is overruled.

*Constitutionality of Article 37.071*

In point of error forty-two, appellant argues that the mitigation special issue is unconstitutional because it is not subject to meaningful appellant review. We recently considered and overruled arguments identical to those raised by appellant, holding that an appellate sufficiency review of a negative verdict regarding the mitigation special issue is neither constitutionally required nor possible under current law. *McFarland v. State*, supra, at 499; *Lawton v. State*, supra at 557. Appellant's forty-second point of error is overruled.

In point of error forty-three, appellant asserts that Article 37.0711 is facially unconstitutional because Article 44.251(a) *requires* a sufficiency review of verdicts to the mitigation special issue. Again, we refer appellant to our recent discussion overruling identical arguments. *McFarland*, supra, at 498–99; *Lawton*, supra, at 557. Appellant's forty-third point of error is overruled.

 In point of error forty-four, appellant asserts that the Due Process Clause of the Fourteenth Amendment of the federal constitution requires a comparative proportionality review on appeal of the deathworthiness of each defendant sentenced to death, ensuring that the sentence is not disproportionate when compared to other capital murder cases in which a sentence of death has been imposed. He relies exclusively on the recent holding of the United States Supreme Court in *Honda Motor Company, Ltd. v.*

*Oberg,* 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994).

In *Honda* the Supreme Court held that the Due Process Clause requires some form of appellate review of jury awards of punitive damages in civil cases. The Court predicated this holding on the fact that common law at the time of the enactment of the Fourteenth Amendment contemplated appellate review of the amount of punitive damages. *Id.,* at 420–26, 114 S.Ct. at 2335–38. The common law requirement was said to raise a presumption that lack of appellate review of punitive damages for excessiveness violates due process, a presumption that could only be overcome by some alternative state law mechanism adequate to protect against the danger of jury overreaching. *Id.,* at 429, 114 S.Ct. at 2339. Oregon was found to have no such alternative mechanism. *Id.,* at 433, 114 S.Ct. at 2341.

But the Supreme Court did not say anything in *Honda* about what form of appellate review due process requires, even in the context of jury awarded punitive damages. For that reason, if no other, we cannot read *Honda* for the proposition that appellate review of jury verdicts on the capital punishment special issues in Texas must include a comparative proportionality analysis. Moreover, appellant does not even argue, much less cite authority to support, the proposition that when the Fourteenth Amendment was promulgated the common law required that every capital sentence be measured on appeal against all other cases in which a death sentence had been imposed in order to insure it was part of a consistent practice, and not arbitrary or capricious. Thus, appellant can raise no presumption that, absent an analysis for comparative proportionality, appellate review of capital sentences in Texas violates due process. The *Honda* analogy does not hold water. Appellant's forty-fourth point of error is overruled.

In point of error forty-five, appellant urges us to adopt Justice Blackmun's dissenting opinion in *Callins v. Collins,* 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994), to hold that the tensions between the requirements of well defined death eligibility and open-ended consideration of mitigating evidence are irreconcilable and render capital punishment unconstitutional. Of course we are not at liberty to do so—at least not for purposes of construing the Eighth Amendment. Referring instead to the authoritative, contrary holdings of *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), and more recently, *Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), we must overrule appellant's forty-fifth point of error.

In point of error forty-six, appellant argues that our capital punishment scheme violates the United States Constitution because the legislative amendments to Article 37.071 and the extra-statutory jury charges added by trial courts have constructed schemes under which similarly situated capital defendants are arbitrarily and erratically subjected to the death penalty. We have recently overruled indistinguishable arguments. *Lawton v. State,* supra, at 560; *See also Sonnier v. State,* 913 S.W.2d 511, 512 (Tex.Crim.App. 1995); *Dinkins v. State,* 894 S.W.2d 330, 341 (Tex.Crim.App.1995). Appellant's forty-sixth point of error is overruled.

In his forty-seventh point of error appellant contends that the mitigation special issue, Article 37.0711 § 3(e), renders our capital punishment scheme unconstitutional in that it allows untrammeled discretion in imposing the death sentence. He cites *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). But *Furman* concerns the untrammeled discretion to impose the death penalty. *Gregg,* 428 U.S. at 199, 96 S.Ct. at 2937; *Tuilaepa,* 512 U.S. at 972, 114 S.Ct. at 2635. There is no constitutional prohibition against the untrammeled discretion to impose a life sentence where a death sentence is justified. *Tuilaepa,* 512 U.S. at 972, 114 S.Ct. at 2635; *Lawton v. State,* supra, at 560. Point of error forty-seven is overruled.

In supplemental point of error one appellant asserts that his sentence of death is a violation of the cruel and unusual prohibitions of the Eighth Amendment. He concedes, for argument's sake, that the death

penalty is not *per se* unconstitutional, but argues that its imposition after fifteen-years of waiting for the resolution of his case would be cruel and unusual punishment. Appellant notes that ten years were spent waiting for our resolution of his first appeal to this Court, and asserts that "one can imagine" the relentless and severe psychological stress, anxiety, and depression he has faced.

The State counters that appellant cannot be heard to raise this complaint at this juncture because there is no record upon which his factual assertions can be verified. We agree. Appellant failed to establish a record supporting the factual predicates of his claim. For example, he asserts that he suffered devastating psychological discomfort during his fifteen-year incarceration, but this claim is not supported by the record. To the contrary, appellant introduced evidence that his incarceration has edified and improved his character. It is a long standing principle that we cannot review contentions which depend upon factual assertions outside of the record. *Franklin v. State,* 693 S.W.2d 420, 431 (Tex.Crim.App.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986) (Mere assertions in a brief not supported by evidence in the record will not be considered on appeal); *Davila v. State,* 651 S.W.2d 797, 799 (Tex.Crim.App.1983) (Assertions in an appellate brief unsupported by evidence cannot be accepted as fact). In the absence of record evidence in support of appellant's claim, we cannot sustain his point of error.

We also observe that under extant caselaw from other jurisdictions, the law does not recognize the present claim. *See Richmond v. Lewis,* 948 F.2d 1473, 1491 (9th Cir.1990) *rev'd on other grounds,* 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). *See also Lackey v. Texas,* —— U.S. ——, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995); *Turner v. Jabe,* 58 F.3d 924 (4th Cir.1995); *McKenzie v. Day,* 57 F.3d 1461 (9th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 1840, 131 L.Ed.2d 846

(1995). Appellant's first supplemental point of error is overruled.

The judgment of the trial court is affirmed.

BAIRD, Judge, concurring and dissenting.

I write separately to express my reasons for believing the majority errs in holding points of error twenty-five through forty were not preserved for our review because appellant failed to exhaust his peremptory strikes.

### I.

We have long acknowledged that voir dire is an integral part of defense counsel's role in providing adequate legal assistance because it allows counsel to *intelligently* exercise peremptory strikes during the jury selection process. *Dinkins v. State,* 894 S.W.2d 330, 344–45 (Tex.Cr.App.1995). We view a trial judge's decision to limit voir dire under an abuse of discretion standard and a trial judge abuses his discretion when he denies a proper question concerning a proper area of inquiry. *Ibid.* It is important to remember that harm is *not* a consideration when dealing with the erroneous limitation of voir dire. *Nunfio v. State,* 808 S.W.2d 482, 484 (Tex.Cr.App.1991).[1] Indeed, notion of harm was specifically rejected in *Smith v. State,* 513 S.W.2d 823, 826 (Tex.Cr.App.1974), where we stated:

> ... [W]e reject the State's argument that these contentions should be denied because the appellant is unable to prove "harm" by showing his peremptory challenges were exhausted or that he had to accept an objectionable juror.... [T]he harm in preventing answers to any proper question is the inability to intelligently make use of the peremptory challenges.

We have repeatedly reaffirmed that the denial of a proper question is reversible error. *Maddux v. State,* 862 S.W.2d 590, 591 (Tex.Cr.App.1993); *Woolridge v. State,* 827 S.W.2d 900, 906, 907 (Tex.Cr.App.1992); *Allridge v. State,* 762 S.W.2d 146, 163 (Tex.Cr.

---

**1.** As Professors Dix and Dawson noted: "The harm is the infringement upon counsel's ability to use whatever answers there might have been in the calculus involved in deciding whom on the panel to strike." 42 G. Dix & R. Dawson, TEXAS PRACTICE: Criminal Practice and Procedure § 35.33 (1995).

App.1988); *Cockrum v. State*, 758 S.W.2d 577, 584 (Tex.Cr.App.1988); *Smith v. State*, 703 S.W.2d at 641, 643 (Tex.Cr.App.1985); *Powell v. State*, 631 S.W.2d 169, 170 (Tex.Cr. App.1982); *Mathis v. State*, 576 S.W.2d 835, 837 (Tex.Cr.App.1979).

To preserve the issue for appellate review, the defendant must demonstrate only that he sought to ask a proper question which the trial judge denied. *Cockrum*, 758 S.W.2d at 584; *Caldwell v. State*, 818 S.W.2d 790, 794 (Tex.Cr.App.1991); *Allridge*, 762 S.W.2d at 163; *Gardner v. State*, 730 S.W.2d 675, 689 (Tex.Cr.App.1987); *Nunfio*, 808 S.W.2d at 484; *and*, *Smith*, 703 S.W.2d at 643. If the appellate court determines the trial judge denied a proper question, the error is reversible.

## II.

In spite of this wealth of authority, the majority holds the denial of a proper question to an individual veniremember is harmless unless appellant exhausted his peremptory strikes. *Ante*, 937 S.W.2d at 470–471. This holding is reached by blindly following *Emanus v. State*, 526 S.W.2d 806 (Tex.Cr. App.1975). In *Emanus*, the defendant contended the trial judge erred by denying a proper question of one of the veniremembers. The Court held that in order to preserve error with respect to the denial of a proper question *to an individual veniremember*, the defendant must exhaust his peremptory challenges. *Id.*, 526 S.W.2d at 808. This portion of *Emanus* is the basis for the majority's disposition of appellant's points of error twenty-five through forty. However, for the

2. Legal commentators agree:

The suggestion has been made that perhaps denial of a proper question *to a particular venireman* might be rendered harmless by the granting of an additional strike. However, this ignores the fact that the particular venireman's answer to the precluded question might have caused counsel *not* to strike him as easily as it could *to* strike him. We do not know what the answer to the question would have been. If the particular venireman is struck, we have no way of knowing whether the granting of an extra strike cures anything. It certainly does not return the struck venireman to the jury panel.
42 G. Dix & R. Dawson, TEXAS PRACTICE: Criminal Practice and Procedure § 35.33 (1995)

following reasons, I believe *Emanus* was wrongly decided.

First, the requirement that the defendant exhaust his peremptory strikes ignores the fact that voir dire provides information to peremptorily strike or *not* strike a veniremember. In other words, while it is important for the parties to identify veniremembers who hold views *unfavorable* to their case, it is equally important for the parties to determine which veniremembers hold *favorable* views. And without the veniremember's answer to a proper question, it is impossible for the parties to know the veniremember's views. Consequently, it is impossible to determine whether the party would have accepted or struck the veniremember. Therefore, *Emanus*' holding that the defendant's failure to exhaust his peremptory strike mitigates harm is erroneous.[2]

Second, *Emanus* did not recognize the right to *intelligently* exercise peremptory challenges. This can be done *only* if the defendant is able to ask a proper question and receive the veniremember's *response*. *See* n. 2, *supra.* Instead, *Emanus*, as the majority notes, requires a defendant to "blindly exercise a peremptory challenge against the veniremember to prevent him from sitting on the jury." *Ante*, 937 S.W.2d at 471–474. The *Emanus* Court provided no basis for this requirement.[3] Clearly, a defendant should not be required to exhaust his peremptory strikes when he is deprived of the information necessary to exercise them *intelligently*.

(emphasis in original)(internal quotations and citations omitted).

3. Providing no authority for their actions, the *Emanus* Court held:
... Our research has revealed no cases resulting in reversal where the limitation of the Voir dire examination complained of pertained to only one juror. In the cases we have found which were reversed for this reason, the trial court has refused the asking of certain questions or otherwise acted with reference to the jury panel as a whole.... The fact ... that appellant did not exercise all his peremptory challenges, is relevant in this situation and mitigates the harmfulness of any error.
*Id.*, 526 S.W.2d at 808.

### III.

Apparently, the majority relies on *Emanus* because it dealt with an individual venire-member and in capital cases voir dire is conducted on an individual basis. Tex.Code Crim. Proc. Ann. art. 35.17(2). Indeed, my research reveals that even though *Emanus* was a non-capital case, it has been applied only in capital cases. *Gardner v. State*, 733 S.W.2d 195, 212 (Tex.Cr.App.1987); *Sanne v. State*, 609 S.W.2d 762, 770 (Tex.Cr.App.1980); *and, Collins v. State*, 548 S.W.2d 368, 371 (Tex.Cr.App.1976). *See also, Gardner*, 730 S.W.2d at 690. However, *Gardner, Sanne* and *Collins* do not provide any authority to support their holdings or any analysis to distinguish our established precedent to the contrary. Finally, notwithstanding the majority assertions otherwise, *ante*, 937 S.W.2d at 471, n. 9, we do not differentiate between capital and non-capital crimes when considering the denial of a proper question.[4] *See, Caldwell*, 818 S.W.2d at 793–94 (Capital case); *Allridge*, 762 S.W.2d at 163 (Capital case); *Cockrum*, 758 S.W.2d at 584 (Capital case); *Gardner*, 730 S.W.2d at 689 (Capital case); *See also, Nunfio*, 808 S.W.2d at 484 (Non-capital case); *Smith*, 703 S.W.2d at 643 (Non-capital case); *and, Smith*, 513 S.W.2d at 826 (Non-capital case).[5]

In sum, *Emanus* directly contradicts our holdings which recognize the constitutionally guaranteed right to question jurors in order to *intelligently* exercise peremptory challenges. *McCarter v. State*, 837 S.W.2d 117, 120 (Tex.Cr.App.1992); *and, Ex parte McKay*, 819 S.W.2d 478, 482 (Tex.Cr.App. 1990). Accordingly, *Emanus* and its progeny should be overruled.

4. Indeed, if we did differentiate between capital and noncapital cases as the majority suggests, the majority's reliance on *Emanus* is entirely misplaced because *Emanus* was a non-capital case.

5. The majority recognizes these capital cases stand for the proposition that the denial of a proper question is reversible error. However, the majority states that holding was mere dicta. *Ante*, 937 S.W.2d at 471 n. 9. However, the same can be true of this Court's reliance on *Emanus* in *Gardner*, 733 S.W.2d at 212 ("[T]rial

### IV.

In points of error thirty, thirty-five, thirty-six and thirty-seven, the record reflects the question and the State's objection, but does not reflect a ruling by the trial judge. Because the record does not reflect such a ruling, I concur in the majority's conclusion that these points of error were not preserved for our review. *Allridge*, 762 S.W.2d at 163; *Cockrum*, 758 S.W.2d at 584; *Gardner*, 730 S.W.2d at 689; *and, Nunfio*, 808 S.W.2d at 484.[6] However, as to the remaining points of error, the record reflects the questions appellant sought to ask and the trial judge's ruling. Thus, the error, if any, was preserved and the majority errs by failing to address the merits of those points of error.

OVERSTREET, Judge, dissenting.

I dissent to the majority's discussion of points of error twenty-five through forty regarding limiting appellant's voir dire questioning of several veniremembers. I believe that the appropriate analysis of these points of error involves a determination of whether appellant was prevented from asking proper questions.

This Court has held that in the voir dire of a capital murder trial, if a disallowed question was proper, harm is presumed because the defendant has been denied the intelligent use of his peremptory strikes. *Cockrum v. State*, 758 S.W.2d 577, 584 (Tex.Cr.App.1988), *cert. denied*, 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989). In *Allridge v. State*, 762 S.W.2d 146, 162–64 (Tex.Cr.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989), in discussing the restriction of voir dire in a capital murder

judge did not limit appellant's voir dire in proper areas of questioning."), and *Sanne*, 609 S.W.2d at 770 ("The proposed questions were cumulative of those already asked and answered.").

6. In *Nunfio*, we stated:
Once appellant posed the specific question he sought to ask the venire and the judge refused to allow the question, the ruling by the trial court amounted to a direct order not to ask the question. Appellant obtained a specific ruling as to a specific question and properly preserved the issue for review.
*Id.*, 808 S.W.2d at 484.

trial, this Court noted that the trial court's decision in making such a restriction was reviewed as to whether it was an abuse of discretion, with the test turning on whether the question was proper, i.e. if it sought to discover a prospective juror's views on an issue applicable to the case. If the question was proper, an answer denied prevented intelligent use of the peremptory challenge and harm is shown. *Id.*

In another capital case, *Caldwell v. State,* 818 S.W.2d 790, 793–94 (Tex.Cr.App.1991), *cert. denied,* 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992), this Court stated that when a defendant challenges a trial judge's limitation on voir dire, such must be reviewed under an abuse of discretion standard, the focus of which is upon whether the defendant proffered a proper question concerning a proper area of inquiry, and if a proper question is disallowed, harm to the defendant is presumed because he has been denied the ability to intelligently exercise his peremptory strikes; with a proper question being one that seeks to discover a veniremember's views on an issue applicable to the case. In another capital case, this Court stated, "The trial court abuses its discretion when it prevents defense counsel from asking a proper voir dire question." *Etheridge v. State,* 903 S.W.2d 1, 9 (Tex.Cr.App.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). In another capital murder case, this Court pointed out that we have long acknowledged that voir dire is an integral part of defense counsel's role in providing adequate legal assistance because it allows counsel to intelligently exercise peremptory challenges and challenges for cause during the jury selection process, and that a trial judge abuses his discretion when he limits a proper question concerning a proper area of inquiry. *Dinkins v. State,* 894 S.W.2d 330, 345 (Tex.Cr.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995).

Thus, based upon the above-discussed precedent, the issue in points of error twenty-five through forty is whether appellant was denied the opportunity to ask "proper" questions. These questions involved, for example, whether various veniremembers could consider such things as: the full punishment range, duress as mitigating evidence, a life sentence under any factual situation, the presumption of innocence after learning that the defendant had been previously convicted but was given a new trial, and any evidence as mitigating. The majority should examine each of the alleged restrictions in questioning veniremembers and determine whether appellant was denied the opportunity to ask "proper" questions, regardless of his use or non-use of peremptory challenges against those veniremembers. As this Court has acknowledged, the problem with limiting proper questioning is depriving the defendant of the opportunity to intelligently exercise his peremptory challenges and challenges for cause during the jury selection process. Preventing proper questioning precludes such intelligent exercise of challenges and such is not cured by using peremptory challenges—allowing such proper questioning on occasion reveals information which results in a veniremember being accepted as a juror rather than being peremptorily challenged.

Because the majority declines to analyze each of appellant's claims as to whether he was denied the opportunity to ask proper questions of veniremembers, and in truth and fact procedurally defaults appellant, I respectfully dissent to the discussion and disposition of points twenty-five through forty. Otherwise, I concur with the remainder of the opinion.