

**NUMBER 13-07-00248-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **JESSE FLORES GARCIA,** | **Appellant,** |

**v.**

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 377th District Court of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Garza

Appellant, Jesse Flores Garcia, was convicted of sexual assault and sentenced to sixty years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (Vernon Supp. 2007). He now appeals, claiming that: (1) the evidence adduced at trial was legally insufficient to support his conviction; (2) the evidence adduced at trial was factually insufficient to support his conviction; (3) the trial court erred in denying his motion for continuance; and (4) he was provided ineffective assistance of counsel. We affirm.

## I. BACKGROUND

On June 15, 2006, Garcia was charged by indictment with aggravated sexual

assault.  *See id.* § 22.021(a)(2)(A)(iv) (Vernon Supp. 2007) (providing that a person commits aggravated sexual assault if the person intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent, if the person uses or exhibits a deadly weapon in the course of the same criminal episode).[1]

At trial, C.W.[2] testified that on June 12, 2003, she and several of her friends were patronizing a bar in Victoria, Texas.  At approximately 1:30 a.m. the following morning, after having about five or six drinks, C.W. decided to leave the bar, but she was not able to get a ride home.  Instead, she decided to walk to a friend's nearby residence.

Upon leaving the bar, C.W. was approached by a man who started asking her questions.  C.W. continued to walk ahead, but the man followed her; she started to walk faster, and eventually took a wrong turn.  When she came up to a pay phone at a gas station, C.W. attempted to make a phone call, but she did not have any change.  The man who had been following her approached her and offered her change.  She took the change and, while the man who followed her was still beside her, she called her friend using the pay phone.  C.W. told her friend that she needed a ride; however, ten minutes passed without the friend showing up.  C.W. testified that, at this point, she saw that the man following her was no longer there, and so she decided to resume her walk home.

C.W. then testified regarding what happened next:

When I was starting to cut along the side of the Patti Dodson Health Center, I was walking through the grass and the defendant came up behind me and put his arm around my throat and he started choking me.  At first, I tried to fight back.  I bit him, on his forearm, and I scratched him, but he had me from behind.  He was choking me so hard I was blacking out.

And I was begging him not to kill me and he kept telling me, "Don't fight with me.  Don't make me have to hurt you."  And I just decided to save my life and

---

[1] On January 16, 2007, the State filed a motion to amend its indictment to remove any reference to the use or exhibition of a deadly weapon.  The record does not reflect any ruling by the trial court on this motion, nor does the record reflect the filing of an amended indictment.

[2] Although the complainant's identity was not concealed at trial, we will use only her initials here, given the nature of the case.

to let him rape me, so that he wouldn't kill me for trying to fight.

And, with his arm behind me, he overpowered me and he swept my feet out from underneath me and I fell down on the ground, with him on top of my back. He pulled my shorts down around my knees and he pulled his penis out and put it inside of me.

When asked if the assailant used a weapon other than his hands and body, C.W. responded: "Yes, sir. I'm not sure exactly what he had. It was small. I thought maybe it was a box cutter or a small knife. He cut my chin when he was holding it to my throat and he began raping me."

C.W. testified that when the assailant ejaculated, he relaxed and loosened his grip, and C.W. was then able to run toward a nearby Walgreens store. An employee at the Walgreens called 911 and emergency personnel arrived soon thereafter. C.W. was then taken to a hospital and examined. Juanita Dale James, a sexual assault nurse examiner, testified that she examined C.W. and noted a laceration on her chin. James also testified that she noted no bruising on C.W.'s arms, legs, or back.

C.W. was subsequently taken to the police department to view mug shots in an attempt to identify the assailant. C.W. identified one as the assailant; however, the person she identified was incarcerated at the time of the assault.

Tom Copeland of the Victoria County Sheriff's Department testified that DNA taken from C.W. during her post-assault examination had matched a sample contained in the Combined DNA Index System ("CODIS").[3] After learning that the matched sample belonged to Garcia, Copeland obtained an evidentiary search warrant for Garcia's blood. Chara Leita, a phlebotomist, testified that, pursuant to the warrant, she drew blood from Garcia at the Ellis Unit of the Texas Department of Criminal Justice-Institutional Division ("TDCJ-ID") in Huntsville, Texas.

Pamela Smith and Lisa Harmon Baylor, forensic scientists with the Texas Department of Public Safety ("DPS"), also testified. Smith stated that she examined C.W.'s

---

[3] CODIS is a national DNA database jointly maintained by the Federal Bureau of Investigation and various state and local agencies. *See* TEX. GOV'T CODE ANN. § 411.141(1) (Vernon Supp. 2007).

sexual assault kit and the clothes C.W. was wearing at the time of the attack. Smith verified the presence of spermatozoa on the swabs taken from C.W. during the post-assault examination as well as on her clothes. Baylor testified that she compared a blood sample known to be from Garcia with the sperm cell sample taken from C.W.'s sexual assault kit; the comparison revealed a match.

On February 1, 2007, a jury convicted Garcia of sexual assault, a second-degree felony. *See id.* § 22.011 (Vernon Supp. 2007).[4] In considering Garcia's punishment, the jury found as true an allegation that Garcia had previously been convicted in 1990 of burglary of a building, enhancing his conviction to that of a first-degree felony. *See id.* § 12.42(b) (Vernon Supp. 2007) (providing enhanced punishments for repeat felony offenders). The jury sentenced Garcia to sixty years' confinement in TDCJ-ID. In the jury charge as to punishment, the trial court included a "Special Issue No. 1" which asked: "Do you find from the evidence beyond a reasonable doubt that [Garcia] used or exhibited a deadly weapon, to wit: a sharp object, if he did, during the commission of the offense alleged in the indictment?" The jury answered affirmatively.

The trial court certified Garcia's right to appeal on February 2, 2007. Garcia filed a motion for new trial on February 28, 2007, which was denied by the trial court on March 19, 2007. Garcia filed his notice of appeal on April 13, 2007.

## II. Discussion

### A. Evidentiary Sufficiency

By his first two issues, Garcia contends that the evidence adduced at trial was legally and factually insufficient to establish a finding that a deadly weapon was used in

---

[4] Although the indictment charged Garcia with aggravated sexual assault, *see* TEX. PENAL CODE ANN. § 22.021(a)(2)(A)(iv) (Vernon Supp. 2007), the trial court charged the jury only on the offense of sexual assault. *See id.* § 22.011(a)(1)(A) (Vernon Supp. 2007); *see also* TEX. CODE CRIM PROC. ANN. art. 37.08 (Vernon 2006) ("In a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense.").

commission of the offense.[5]  Specifically, Garcia claims that the evidence was insufficient to show that a "sharp object" was used or exhibited during the commission of a felony, or that C.W. was "put in danger by the 'sharp object.'"

## 1.      Standard of Review

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003).  "This standard is meant to give 'full play to the [trier's] responsibility fairly' to 'draw reasonable inferences from basic facts to ultimate facts.'"  *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)).  We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In conducting a factual sufficiency review, we consider the evidence in a neutral light.  *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).  The verdict is to be set aside only if:  (1) it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust; or (2) it is against the great weight and preponderance of the evidence.  *Id.* at 415 (citing *Johnson v. State*, 23 S.W.3d 1, 10 (Tex. Crim. App. 2000)).  To reverse a verdict for factually insufficient evidence, we must "explain

---

[5] We note that the purpose of the deadly weapon question was not to support a conviction of aggravated sexual assault as charged in the indictment.  *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(A)(iv). Rather, "Special Issue No. 1" appears to have been propounded to the jury with reference to section 3g(a)(2) of article 42.12 of the Texas Code of Criminal Procedure, which provides in relevant part that a judge may not impose community supervision in lieu of imprisonment:

> when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited.

TEX. CODE CRIM. PROC. ANN. art. 41.12, § 3g(a)(2) (Vernon 2006); *see id.* art. 42.12, § 3(a) (Vernon 2006) (permitting a judge to suspend imposition of a sentence and place the defendant on community supervision).

in exactly what way the State's evidence, while legally sufficient, is nevertheless too weak to withstand scrutiny, or in exactly what way we perceive the conflicting evidence greatly to preponderate against conviction." *Id.* at 414.

### 2. Applicable Law

A deadly weapon is defined in the Texas Penal Code as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2007). The nature of the injury is to be considered, but injury is not required for an object to be a deadly weapon. *Dominique v. State*, 598 S.W.2d 285, 286 (Tex. Crim. App. 1980). Instead, the most important factor is the manner of use. *Id.* (finding scissors to be a deadly weapon); *Quintana v. State*, 777 S.W.2d 474, 478 (Tex. App.–Corpus Christi 1989, pet. ref'd) (finding a dustpan to be a deadly weapon).

A sharp object is not, per se, a deadly weapon. *See Tisdale v. State*, 686 S.W.2d 110, 114 (Tex. Crim. App. 1985). The evidence at trial must have supported the conclusion that the sharp object in this case was capable of causing death or serious bodily injury due to the manner of its use. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (defining "deadly weapon"). Factors to consider in making this determination include: the size, shape, and sharpness of the object; the manner of its use or intended use; the nature or existence of inflicted wounds; evidence of the object's life-threatening capabilities; the physical proximity between the victim and the object; and any words spoken by the one using the object. *See, e.g.*, *Thomas v. State*, 821 S.W.2d 616, 619-620 (Tex. Crim. App. 1991).

### 3. Analysis

C.W. testified that her assailant used a "box cutter or a small knife" in carrying out the attack, and that he "cut my chin when he was holding it to my throat and he began raping me." James, the nurse who examined C.W., testified that she noted a laceration on C.W.'s neck. Garcia asserts that, "given [C.W.'s] telling of the attack, it is more likely

6

that she received a scratch on her chin when she was thrown to the ground, on her stomach, with her attacker on her back." However, C.W. specifically rebutted this theory, testifying that "[if] you look at the picture that is in evidence, it does not appear to be a scrape. It's a very fine, thin line. And the scar that I have is a very fine-lined scar." Viewing this evidence in the light most favorable to the verdict, *see Sanders*, 119 S.W.3d at 820, we conclude that a rational trier of fact could have found that C.W.'s laceration was caused by the object held by Garcia.

C.W. also testified that her assailant threatened her during the attack by saying: "Don't fight with me. Don't make me have to hurt you." A threat communicated by a defendant while displaying a weapon can support a finding that the weapon was capable of causing death or serious bodily injury. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

Garcia notes correctly that no "sharp object" was introduced into evidence by the State. However, it is not necessary for the weapon to be actually introduced into evidence in order to support a deadly weapon finding. *See Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982); *Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.–San Antonio 2007, pet. ref'd).

Given C.W.'s testimony that her assailant held a sharp object to her throat, and that he threatened her while doing so, we conclude that there was legally sufficient evidence to support the deadly weapon finding. *See Sanders*, 119 S.W.3d at 820. Moreover, viewing the evidence in a neutral light, we cannot say that the finding was clearly wrong, manifestly unjust, or against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414. Garcia's first two issues are overruled.

## B.     Denial of Motion for Continuance

By his third issue, Garcia argues that the trial court erred in denying his motion for continuance. We review a trial court's ruling on a motion for continuance for abuse of discretion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) (citing

*Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995); *Cooks v. State*, 844 S.W.2d 697, 725 (Tex. Crim. App. 1992)); *see* TEX. CODE CRIM. PROC. ANN. art. 29.03 (Vernon 2006) (providing that a criminal action *may* be continued upon sufficient cause shown in the motion), art. 29.06(6) (Vernon 2006) (stating that the truth, merit and sufficiency of a motion for continuance shall be addressed to "the sound discretion of the court" and "shall not be granted as a matter of right"). To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion. *Janecka*, 937 S.W.2d at 468; *Heiselbetz*, 906 S.W.2d at 511.

Trial in the instant case was originally set for October 30, 2006. On September 26, 2006, with the agreement of both parties, the trial court reset the matter for the jury trial docket of November 8, 2006. On that date, Garcia appeared with his attorney and rejected a plea agreement. At the November 8, 2006 hearing, Garcia's counsel noted, with respect to the progress of discovery, that "[t]hey [the State] have everything. We've been provided everything." The case was again reset for trial on January 24, 2007. Garcia's trial counsel filed a motion for continuance on January 18, 2007.

A hearing was held on the motion on January 24, 2007. Garcia's trial counsel stated that he required additional time because "the State has filed additional motions, including their intent to proceed in this case, under the habitual offender status . . . ." Garcia's trial counsel also stated that he needed more time to develop "psychological mitigating evidence that might be brought in on [Garcia's] behalf, as well as the issues involved around the DNA reliability . . . ." Garcia, however, interrupted his counsel at this point and stated:

> On my behalf, I want to go to trial. I'm not trying to wait. I've been here too long. I [sic] been here six months and I was supposed to go to trial two other times. All this – I don't know what they're trying to do. I don't know what they're trying to do, all this continuance and all of that. I [sic] been sitting in the county too long. They should have had their stuff together a long time ago.

The trial court denied Garcia's motion, but set a new trial date of January 29, 2007.

8

Garcia's counsel again moved for continuance on January 29, 2007, claiming that he needed additional time to: (1) conduct an investigation into mitigation issues and DNA reliability; (2) have his DNA expert review material obtained on January 24, 2007 from the DPS laboratory in Corpus Christi; and (3) have his mitigation expert examine a videotaped interview of C.W. which was provided to the defense on January 27, 2007. The trial court denied the motion and commenced the trial.

Garcia contends that "it was obvious from the arguments made by . . . trial counsel and his motions for continuance that he was unprepared to defend [Garcia's] case" and that "the harm to [Garcia] clearly outweighs any inconvenience or waste of resources that were saved by putting the case to trial." However, these arguments do not address whether Garcia was "actually prejudiced by the denial of his motion." *See Janecka*, 937 S.W.2d at 468. Indeed, from our review of the record, it appears that he was not. The trial court permitted Garcia's DNA expert to be present in the courtroom in order to aid Garcia's counsel in conducting cross-examination. Further, Garcia's mitigation expert testified during the punishment phase of the trial.

Because Garcia has not established that he was actually prejudiced by the denial of his motion, we conclude that the trial court did not abuse its discretion. *See Janecka*, 937 S.W.2d at 468; *Heiselbetz*, 906 S.W.2d at 511. Accordingly, Garcia's third issue is overruled.

## C.    Ineffective Assistance of Counsel

By his fourth issue, Garcia contends that he was denied a fair and impartial trial because of the ineffectiveness of his trial counsel.

To establish ineffective assistance of counsel, Garcia must show: (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); *Jaynes v. State*, 216 S.W.3d 839, 851

(Tex. App.–Corpus Christi 2006, no pet.).  Whether this test has been met is to be judged on appeal by the totality of representation, not by any isolated acts or omissions.  *Jaynes*, S.W.3d 839 at 851.  The burden rests on the appellant to prove ineffective assistance of counsel by a preponderance of the evidence.  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).  Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if the appellant overcomes the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance.  *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851.  Moreover, the acts or omissions that form the basis of appellant's claim of ineffective assistance must be supported by the record.  *Thompson*, 9 S.W.3d at 814; *Jaynes*, 216 S.W.3d at 851.

Garcia first contends that his trial counsel was ineffective because "it is apparent from the record that [counsel] had a trial strategy that was thwarted by his own failure to diligently prepare the case."  Specifically, Garcia claims that his trial counsel's DNA expert had "identified a problem with the DNA data that was received" and that his trial counsel should have called the expert to rebut the testimony of the State's DNA experts.  However, the record is silent as to why his trial counsel declined to call the DNA expert.  A silent record which provides no explanation for counsel's actions usually will not overcome the strong presumption of reasonable assistance.  *Thompson*, 9 S.W.3d at 813-14.

Garcia also claims that his counsel erred by failing to object to, or seek a motion in limine regarding, the State's evidence that Garcia's blood was drawn at the Ellis Unit of the Texas Department of Criminal Justice.  According to Garcia, this evidence "[c]learly . . . indicated to everyone on the jury that [Garcia] was in prison for a felony offense prior to the trial of this matter" and it "was obviously violative of Rule 404(b) and 38.37 of the Texas Code of Criminal Procedure . . . ."  Moreover, Garcia notes that, during the punishment phase of the trial, his counsel failed to object to the State's posing a question regarding an accusation that Garcia had committed a previous sexual assault.  We note again, however,

10

that the record is silent as to the reasons why Garcia's counsel declined to object to the evidence and argument in question. *See id.* Without any affirmative explanation as to counsel's actions, we cannot say that his representation fell below an objective standard of reasonableness.

We conclude that Garcia has not overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851. Accordingly, his fourth issue is overruled.

## III. Conclusion

Having overruled Garcia's four issues, we affirm the judgment of the trial court.

DORI CONTRERAS GARZA,
Justice

Do not publish.
Tex. R. App. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 28th day of August, 2008.

11