

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00206-CR

CAROL RUTH HURLEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 46293-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Found to have had a blood alcohol content of .214 at the time of her latest offense of felony driving while intoxicated (DWI),[1] Carol Ruth Hurley entered an open plea of guilty on July 26, 2017, testified[2] at length during the punishment phase of that proceeding, and was at that time

---

[1]*See* TEX. PENAL CODE ANN. § 49.09(a) (West Supp. 2017).

[2]Hurley's testimony apparently did her only harm with the trial court. She told the court how she had never drunk alcohol until she was twenty-nine years old. By thirty-one, she was attending Alcoholics Anonymous (AA). Hurley detailed her personal outreach, sponsoring or supporting several AA participants; she worked in jails to help AA attendees; and she personally attended no less than seventeen AA meetings weekly. She lamented that, if the court sentenced her to prison, there would be no one to transport four women from Athens to a weekly AA meeting in Tyler. She and her late husband had both been active AA members and frequently brought "drunks home." She had made such a good impression on her last parole officer, that the officer had told Hurley she planned to "take [her] vacation and write a plan on how to help people that are successful with parole, like [Hurley had] been."

Hurley said she had relapsed into alcoholism on the death of her husband, which led to her placement in an exclusive rehabilitation program in Georgia. There, she fell in love with an attorney who took Hurley to the figurative cleaners, apparently draining away a good deal of her assets. Hurley said that unfortunate affair led to her getting two consecutive DWIs. The instant offense was Hurley's third felony DWI conviction. Her community supervision for one of her prior felony DWIs had been revoked, and she had been sentenced to five years' confinement. She said that had been very difficult, as both her parents died shortly after her release, and she regretted being in prison rather than spending that time with her parents late in their lives. She told the court she was admitted to a special doctoral program with Texas A&M to study addiction issues affecting women. She had an "undercover" job with General Motors as some kind of secret shopper.

Through cross-examination by the State and questioning from the trial court, some discrepancies or inconsistencies were revealed. When the court announced her sentence, it specifically cited her credibililty as having had an impact on its decision. Hurley claimed to have taken the LSAT exam and intended to get a law degree at Texas Christian University (TCU), but was prevented by her prior DWI felony conviction. In announcing its sentence, the court pointed out that TCU had no law school. Hurley said that, on one of her earlier DWI convictions she had asked for a therapeutic placement to treat her addiction, but she had been refused by her Gregg County community supervision officer. That elicited skepticism from the State and the trial court. Hurley gave the name of her community supervision officer for that earlier supervision period and said the officer told her "they ha[d] no way" of sending her to a treatment facility when Hurley asked. When it pronounced Hurley's sentence, the trial court pointed out that at the time of that probated sentence there were only three judges before whom she could have been, this trial court being one of them. Each of those judges, the trial court said, "[W]ere big advocates for inpatient treatment and helping individuals." The court found it incongruous that the particular community supervision officer named by Hurley would not have accommodated a request for therapeutic treatment: that "probation officer . . . helped [the court] start [its] SAFPF re-entry court" and was the "big[gest] . . . advocate for getting people help as there [was] in [the] probation department."

As for the circumstances of her arrest, Hurley conceded law enforcement found her stopped in the middle of an exit ramp off Interstate 20. She claimed that she had stopped to check on her dog. That, she agreed, was a very dangerous place to have stopped. She also admitted having recently been drinking at the time. Distraught over the recent death of her brother, she bought a box of wine at a local grocer. Hurley admitted that she had drunk "two cups" of wine. Under some prodding, she elaborated that those cups were "32 ounce" cups "from Chick-fil-A." Her blood

2

given the opportunity to present other evidence in mitigation of her sentence. Because of Hurley's various medical conditions[3] and the trial court's desire to have her transported immediately to a state facility once her sentence was finally pronounced, the trial court indicated its intent to finalize a sentence of fifteen years' imprisonment[4] at a formal sentencing hearing set for August 8. By the time of the formal sentencing, Hurley had retained a different attorney, who asked the court for a continuance to allow the defense to assemble and present mitigating punishment evidence.

Hurley's two appellate arguments are intertwined. First, she complains that the trial court abused its discretion in denying the request for a continuance. Next, she argues that the trial court "erred in allowing the evidence to remain open to consider further facts in raising the sentence for appellant but closed evidence as to anything that would mitigate the sentence." We find no merit to these arguments and overrule them.

"The granting or denial of a motion for continuance is within the sound discretion of the trial court." *Duhamel v. State*, 717 S.W.2d 80, 83 (Tex. Crim. App. 1986). An appellant arguing abuse of discretion in the denial of a continuance must show he or she was prejudiced by the denial.

---

alcohol content was 0.214. At the time of that arrest, Hurley was on community supervision for one of her previous felony DWI convictions. Her vehicle was not equipped with an interlock device, though it was required as part of her supervisory terms.

[3]The trial court delayed formal sentencing "[d]ue to [Hurley's] health issues, and the number of medications [prescribed her], and at the request of the Gregg County jail so [it could] sentence [her] in the morning and they [could] transport [her] as quickly as possible to the Texas Department of Criminal Justice."

[4]Hurley's sentencing range was enhanced to that of a second degree felony on proof of a prior felony conviction. *See* TEX. PENAL CODE ANN. § 12.42 (West Supp. 2017). That prior felony conviction was also a felony DWI.

*Id.*[5] Hurley points to nothing in the record that affirmatively demonstrates prejudice to her from the denied continuance. Although her late-hired attorney claimed he needed time to gather and submit a great deal of mitigation evidence, he did not file a motion for new trial or otherwise make any record of what that mitigating evidence might be. Hurley was indicted in December 2016. Hurley appeared and waived her right to a jury trial on February 10, 2017, when her attorney announced Hurley's intention to enter an open plea in hopes of receiving substance abuse treatment and a probated sentence. This strategy was pursued at the plea hearing in July, during which Hurley testified to the trial court about her history with alcohol abuse, dedication to AA—as both a participant and as a sponsor—and supporting other alcoholics with their recoveries.

After hearing testimony from Hurley at the plea hearing, her attorney argued to the court that she should be placed in an inpatient rehabilitative program in Texarkana. The State pointed out inconsistencies in her testimony and history, questioned her credibility, pointed out that this was Hurley's third conviction for felony DWI, noted that she was arrested after stopping her car in the middle of an interstate highway exit ramp, and urged the maximum sentence of twenty years' imprisonment. The court chose fifteen years' imprisonment.

We cannot say the trial court abused its discretion in denying the continuance.[6] Hurley has not shown how she was denied the chance to defend herself at the earlier punishment hearing or

---

[5]*See also Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) (no abuse of discretion in denying continuance when appellant failed to allege specific prejudices such as unfair surprise, inability to effectively cross-examine State's witnesses, or crucial testimony expected from potential witnesses).

[6]The motion to continue the formal sentencing hearing to allow further evidence was effectively, at least in part, a motion to reopen the punishment evidence. A motion to reopen the evidence is not timely if it comes after arguments have been completed in the case. TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007). Here, arguments concerning punishment had been concluded at the time of the plea hearing on July 26, well before the motion for continuance.

how she was prejudiced by not getting to tender more evidence after the requested continuance. The only reason Hurley sought a continuance was because she had hired a new attorney. That attorney's familiarity or lack thereof with the procedural history and relevant facts should not be construed as prejudicial to Hurley, where the situation was of her making. It was clear in February 2017, approximately five months before her plea and punishment hearing, that she planned to ask for some kind of therapy and a probated sentence. From her testimony, it was clear she had substantial experience with the addiction rehabilitation process. Her testimony mentioned several people in that field with whom she had worked and whom she could have conceivably called to testify for her. Her daughters were present in the courtroom at the plea hearing and declined to offer testimony.[7] In a letter she wrote the court following her sentencing, she complained that her trial attorney had introduced no "mental health and psychological reports" as mitigation. Hurley produced nothing establishing the existence or relevance of any such records. If they did exist, there is no suggestion that she was not in possession of such records before her July 26 plea and punishment hearing or before her August 8 formal sentencing. At the July plea and punishment hearing, the trial court gave Hurley and her then trial counsel wide berth to tell her story and offer what she could as mitigation in support of a probated sentence and rehabilitative treatment. It is evident that the court considered the fact that Hurley's conduct leading to her third felony DWI conviction posed a greater risk to the community than her eligibility for a more lenient, non-incarcerating sentence.

---

[7]After she testified, Hurley's attorney asked if she wanted to sit so her daughters could testify. Hurley answered, "I'm not sure if they -- if they -- if they want to. I don't think they -- they do. They're shaking their heads."

5

There was no abuse of discretion in denying the motion for continuance.

Along with her complaint about the trial court's denial of a continuance, however, Hurley claims that the court "erred in allowing the evidence to remain open to consider further facts in raising the sentence for appellant but closed evidence as to anything that would mitigate the sentence . . . ." Hurley makes this argument based on the court's admonition at the end of the July hearing neither to commit further offenses before the August 8 sentencing nor to fail to appear at the August hearing. Hurley claims that this circumstance, combined with the court denying her new attorney's request for a continuance to review and prepare mitigating evidence, amounted to a denial of due process. We find no support for this claim.

Hurley offers no authority for her argument. She cites cases in which a trial court had threatened to impose the maximum available sentence if a defendant violated his community supervision.[8] Those cases are not analogous here. In those cases, the trial court prospectively determined a sentence without regard to intervening events of which evidence could be presented, for example, if a motion to revoke or adjudicate were to be presented. Here, the court had conducted the punishment hearing, at which Hurley presented mitigation evidence. *Cf. Hardemen v. State*, 1 S.W.3d 689, 690–91 (Tex. Crim. App. 1999) (no right to separate punishment hearing; defendant on deferred adjudication community supervision was afforded opportunity to present evidence at his adjudication hearing; defendant "had the opportunity to present evidence during the proceedings, and that is all that is required.").

---

[8]*E.g.*, *Jefferson v. State*, 803 S.W.2d 470 (Tex. App.—Dallas 1991, pet. ref'd).

We find nothing in the record to support Hurley's claim that the trial court's statements or acts denied her due process. We will presume a trial court is neutral and detached, and does not act arbitrarily, unless there is a clear showing to the contrary. *See Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). By making its statements to Hurley at the end of the July hearing, the trial court did not "arbitrarily refuse to consider the entire range of punishment for an offense or refuse to consider the evidence and impose a predetermined sentence." *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd) (citing *Granados v. State*, 85 S.W.3d 217 (Tex. Crim. App. 2002)). That Hurley retained a different counsel who did not make himself familiar with her testimony from the previous hearing is not a fault that can be imputed to the trial court. The record simply does not support Hurley's contention that the trial court in any fashion limited her ability to present mitigation evidence, much less denied Hurley due process. Indeed, as discussed above, Hurley has pointed out no mitigation evidence she was precluded from presenting. The trial court did not deny Hurley her due process or improperly limit her ability to present mitigation evidence.

We overrule Hurley's points of error. The judgment and sentence of the trial court are affirmed.

Josh R. Morriss, III
Chief Justice

Date Submitted:     March 8, 2018
Date Decided:       March 28, 2018

Do Not Publish