

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00014-CR

Luis **MARQUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR5801
Honorable Stephanie R. Boyd, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: July 7, 2021

AFFIRMED

Luis Marquez appeals his convictions for aggravated sexual assault of a child and indecency with a child by sexual contact, claiming the trial court abused its discretion in denying an agreed motion for continuance and he received ineffective assistance of counsel. We affirm.

### BACKGROUND

The summer before B.C. entered seventh grade, she lived in an apartment with her mother, Cynthia Quiroz, her mother's boyfriend, Marquez, a sister, two brothers, and one half-brother whom Marquez had fathered. Marquez and Quiroz had another child on the way.

At trial, B.C. testified that she did not like Marquez at first, "[b]ecause my mom had just gotten out of a relationship with my dad." Her opinion of Marquez quickly evolved, and they had a good relationship. But Marquez started drinking more. And then, late one night after drinking heavily, Marquez came into her room. He sat down on the bed that her brother was sitting on, and the trio engaged in "a normal conversation." But after her brother fell asleep, Marquez moved to sit on B.C.'s bed and told her "I don't love you like a . . . father loves a daughter. I love you like how I love your mom." Marquez started rubbing B.C.'s leg and "messing with" her underwear. He put his finger in her vagina and groped at her breasts. He went outside to smoke, warning her not to leave the bed. When Marquez returned, he started fumbling with his belt and asked her to take her pants off. She told him she had to go to the restroom but instead went into the master bedroom and tried rousing her mother to tell her what had happened.

Marquez walked into the room without a shirt and took a shower. B.C. froze and was unable to relate what had happened. She did however, either later that night or the next morning, tell her mother[1] that Marquez had "touched her butt." Quiroz confronted Marquez. Marquez denied it, but Quiroz did not trust him and kicked him out of the apartment.

B.C.'s behavior started to change; she became scared, withdrawn, and angry. A year and a half later, after an argument with a classmate, B.C. went to see her middle school's social worker, Michelle Bokaie. Bokaie pressed B.C. about her anger issues, and B.C. made a full outcry. Quiroz and SAPD Officer Stephen Cortinas came to the school. Cortinas interviewed B.C. in front of Bokaie and Quiroz. SAPD Detective Paul Stoeckle set up a forensic interview for B.C. at ChildSafe. After that, Dr. Bradley Norat performed a sexual assault exam at the Center for Miracles and prepared the SANE report.

---

[1] B.C. testified she told her mother that same night. Quiroz testified B.C. told her the next morning when they drove her brother to school.

Marquez was charged with aggravated sexual assault of a child and indecency with a child by sexual contact.

Trial was scheduled to begin on October 15, 2019. On that date, both Marquez and the State filed written motions for continuance. Marquez asserted he needed additional time to review discovery the State had provided the day before and to accommodate defense counsel's schedule. The State claimed it needed additional time because one of its witnesses, Stoeckle, was not available until November 25. The trial court denied Marquez's motion. Although the court did not expressly rule on the State's motion, it continued the trial.

On November 26, the State filed a second motion for continuance, this time based on Dr. Norat's unavailability. The State represented that Dr. Kellogg from the Center for Miracles could testify in lieu of Dr. Norat, but even Dr. Kellogg would not be available until December 6. On December 2, the State identified as a witness Dr. Kissoon from the Center for Miracles, and defense counsel represented he had no objection to Dr. Kissoon. Marquez's counsel then orally endeavored to join the State's second motion for continuance. Although the State requested a continuance until Friday, December 6, 2019, Marquez asked the trial court to continue the case "at least until Monday" to avoid a weekend interrupting trial. The trial court denied the motion.

Jury selection took place on Tuesday, December 3, and on Wednesday and Thursday, the jury heard from B.C., Quiroz, Bokaie, the SAPD officers, and Dr. Kissoon. The trial court admitted the SANE report via the custodian of records for the Children's Hospital. On Friday, December 6, the jury found Marquez guilty of the two counts. Marquez elected to go to the trial court for punishment and on Monday, December 9, the trial court sentenced Marquez to forty years in prison on each count.

**ANALYSIS**

***The Trial Court's Denial of the Agreed-to State's Motion for Second Continuance***

*Standard of Review and Applicable Law*

"A criminal action may be continued by consent of the parties thereto, in open court, at any time on a showing of good cause, but a continuance may be only for as long as is necessary." TEX. CODE CRIM. PROC. ANN. art. 29.02. However, a trial court is not required to continue a case, even where the parties have agreed to a continuance. *McKinney v. State*, 8 Tex. App. 626, 636–37 (Tex. App. 1880). Rather, a trial court's ruling on a motion for continuance is reviewed for abuse of its discretion. *Id.*; *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996).

To establish an abuse of discretion, there must be a showing that the defendant was prejudiced by the denial of the motion. *Gallo*, 239 S.W.3d at 764; *Keaton v. State*, 57 S.W. 1125, 1126 (Tex. Crim. App. 1900) (denial of agreed motion for continuance is not cause for reversal "unless some legal reason is shown whereby an injustice has been done appellant"); *see also Janecka*, 937 S.W.2d at 468.

*Application*

The State's second written motion asked for a continuance until Friday, December 6 to bring in Dr. Kellogg as a witness. "On any subsequent motion for a continuance by the State, for the want of a witness," the motion must meet the Article 29.04 requirements for a first motion,[2] and additionally show: "1. The facts which the applicant expects to establish by the witness, and

---

[2] A first motion "shall be sufficient" if it states, "1. The name of the witness and his residence, if known, or that his residence is unknown; 2. The diligence which has been used to procure his attendance; and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for, a subpoena, in cases where the law authorized an attachment to issue; and 3. That the testimony of the witness is believed by the applicant to be material for the State." TEX. CODE CRIM. PROC. ANN. art. 29.04.

it must appear to the court that they are material; 2. That the applicant expects to be able to procure the attendance of the witness at the next term of the court; and 3. That the testimony cannot be procured from any other source during the present term of the court." TEX. CODE CRIM. PROC. ANN. art. 29.05. Marquez, for his part, asked that the trial court "continue at least until Monday" so that witness testimony would not be interrupted by the weekend.[3] In all other respects, he merely purported to join the State's motion.

Assuming without deciding that an oral adoption of the opposing party's written motion for continuance preserves error under Article 29.02, the trial court did not abuse its discretion in denying the continuance. The State's second motion was predicated on its inability to call a witness to substitute in for Dr. Norat. But it found one: Dr. Kissoon. The State was apparently ready to go forward with her. *See id.* (providing second continuance must be supported by showing that "testimony cannot be procured from any other source").

Marquez did not object to Dr. Kissoon testifying instead of either Dr. Norat or Dr. Kellogg. Instead, Marquez simply told the trial court that he had no objection to Dr. Kissoon as a witness. Marquez argues on appeal that the denial of the motion for continuance was an abuse of discretion because only Dr. Norat or Dr. Kellogg could have testified as to B.C.'s demeanor and other observations made during the exam. But this argument was not part of the State's Article 29.05 motion, which itself identified only Dr. Norat as "the doctor who performed the S.A.N.E. exam on the alleged victim." Nor was it made part of any agreement under Article 29.02. As the State admits, "Appellant, along with the State, failed to establish to the trial court the facts expected to be established by the witness."

---

[3] The jury's work concluded by Friday, making this concern a non-issue.

Under these circumstances, the trial court did not abuse its discretion in denying the motion for continuance. *See Harrison v. State*, 187 S.W.3d 429, 435–36 (Tex. Crim. App. 2005); *Palasota v. State*, 460 S.W.2d 137, 139 (Tex. Crim. App. 1970); *Tindol v. State*, 239 S.W.2d 396, 398 (Tex. Crim. App. 1951) (op. on reh'g) ("[T]he application for continuance must make it appear to the Court that the facts expected to be proved by the witness were material to his defense. To an attorney familiar with the facts of his case, such materiality might be apparent, while to the Judge, not so informed such would not necessarily be so discernible."). Accordingly, we overrule Marquez's first issue.

## Ineffective Assistance of Counsel

### Standard of Review and Applicable Law

To prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate deficient performance and prejudice. *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). An appellant "bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To establish deficient performance, an appellant must show counsel's assistance "fell below an objective standard of reasonableness." *Id*. at 812. To establish prejudice, an appellant "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "If the deficient performance might have affected a guilty verdict, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Miller*, 548 S.W.3d at 499 (internal quotation marks omitted).

An appellant must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson*, 9 S.W.3d at 813. To defeat this

presumption, "the record must affirmatively demonstrate the alleged ineffectiveness." *Id*. at 814 (internal quotation marks omitted).

"Trial counsel should generally be given an opportunity to explain his actions before being found ineffective." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was so outrageous that no competent attorney would have engaged in it." *Id*. (internal quotation marks omitted). "A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id*. at 813–14. Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Id*. at 813.

*Application*

Marquez argues that trial counsel rendered ineffective assistance of counsel by failing to: (1) adequately prepare for trial; (2) adequately cross examine the mother of the victim; (3) object to extraneous evidence contained within the SANE report; (4) object to the late designation of Dr. Kissoon as a witness; and (5) preserve error on the denial of his motion for continuance.

Marquez first contends that trial counsel failed to adequately prepare for trial, as evidenced by counsel's late filings, failure to communicate with Marquez, and deficient voir dire. Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984); *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Lee v. State*, 582 S.W.3d 356, 361 (Tex. App.— San Antonio 2018, pet. ref'd). Trial counsel is constitutionally ineffective when incomplete

investigation was the result of inattention, not reasoned strategic judgment. *Wiggins*, 539 U.S. at 534; *Lee*, 582 S.W.3d at 362.

Marquez argues that he was "deprived of effective assistance during his plea bargaining stage, and during the time prior to his trial date." Marquez here leans into the fact that "pre-trial motions in this case were not filed until a motion for continuance was denied on November 15, 2020, less than three weeks prior to the beginning of trial." But trial counsel's motion for continuance only asked for time enough to complete review of an eight-page document and the ChildSafe video. And though trial counsel's motion for continuance was denied, the relief requested in the State's motion for continuance, filed the same day, was granted. The record from the pretrial hearing establishes that the State had complied with all of counsel's requests, if not before the hearing, then during it. Trial counsel said he had received all discovery and reviewed it with Marquez. Based on that acknowledgement, and its receipt of the written discovery acknowledgment, the trial court found the State in "compliance with discovery." Trial counsel also stated he had received witness lists and a Rule 404(b) list from the State. Trial counsel repeatedly said the State had "complied" with his requests and that he was "satisfied" with the State's responses. There was one exception: Marquez claimed the State had not provided the "discovery of the arrest and conviction report of witnesses, rap sheets," to which the prosecutor responded, "if it's not in the file, I'll have my investigator run it right now and I'll get it for you."

When directly questioned by the trial court, Marquez himself said that trial counsel had notified him of the State's plea offer. When Marquez said he did not "know exactly what it means," because "I feel like I've been guilty and before I—I try to prove my innocence," the trial court explained the presumption of innocence to Marquez and gave trial counsel the chance to discuss the offer with him. Marquez's rejection of the offer was made part of the record. Marquez does not point to any evidence in the record showing that trial counsel failed to investigate the

facts of this case or communicate with him, and we have found nothing in the record here to rebut the strong presumption that counsel's performance in preparing for trial and communicating with Marquez fell within the wide range of reasonably professional assistance. *See Lee*, 582 S.W.3d at 363.

Nor does Marquez make good on his claim that trial counsel, at voir dire, "failed to adequately establish a theme for the jury to follow through the case for Mr. Marquez." Trial counsel actively participated in voir dire and introduced what would be his consistent strategy throughout the trial—discrediting the complaining witness. Before he started his own questions, trial counsel told the jury to look out for changes to a story, and if there are "some facts added, maybe it's not that credible. Maybe you shouldn't believe what you hear." Marquez also argues that trial counsel confused the panel by stating that "touching of the butt" is generally not sexual contact under the statutes unless it involves a touching of the anus. However, by foreshadowing that B.C.'s initial outcry was that Marquez had "touched [her] butt," trial counsel was preparing the panel: if it turned out jurors only believed B.C.'s initial outcry, then there might have been some crime, but there was no crime under the specific charges his client was facing. It cannot be said that no reasonable attorney under similar circumstances would have taken such an approach to this case. Trial counsel could have had valid strategic reasons for conducting voir dire as he did. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Marquez's second complaint is that counsel failed to adequately cross-examine Cynthia Quiroz about her unsuccessful attempt to obtain child support from Marquez. This, says Marquez, was motive evidence—a reason to fabricate the accusations—that ought to have been put before the jury. Defense counsel is generally entitled to pursue all avenues of cross-examination reasonably calculated to expose motive, bias, or interest for a witness to falsify his or her testimony, subject to the trial court's discretion to limit the scope of cross-examination. *See*

*Carroll v. State*, 916 S.W.2d 494, 497–98 (Tex. Crim. App. 1996). But whether and how to cross-examine witnesses are inherently matters of trial strategy that cannot be adequately judged in hindsight. *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005).

Trial counsel's strategy was to challenge the credibility of B.C. Trial counsel did this by cross-examining B.C. about the variations in the different statements she made to her mother, to Bokaie, to Cortinas, to ChildSafe, and then to Dr. Norat. The theory trial counsel put forward was that B.C. was upset that her mother left her father for a man she did not know, and proceeded to have a son with him, and then a daughter. Trial counsel brought out that B.C. had said she "hated" her new half-sister.

The only evidence in the record about Quiroz's efforts to obtain child support is in the SANE report. During B.C.'s examination, a social worker intern met with Quiroz and documented the meeting in the "Mini Psychosocial Assessment" part of the report. Quiroz told the intern that she had sought child support from Marquez. That Quiroz sought child support is not surprising—by then she had two children with Marquez. That she was unsuccessful in doing so is not in the record. Even if trial counsel knew or should have known about that, though, he may not have wanted to let the jury know that Marquez was not willingly supporting his own children. What Marquez characterizes as mitigating may be viewed by others as aggravating. *Id.* ("Cross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial.").

Moreover, had trial counsel so vigorously cross-examined Quiroz about the evidence in the Mini Psychosocial Assessment as to raise a fabrication defense, the State may have been allowed to offer evidence about Marquez's extraneous sexual conduct. *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *Cf. Garcia v. State*, 308 S.W.3d 62, 68 (Tex. App.—San Antonio 2009, no pet.) ("[B]y eliciting testimony

from Garcia on direct examination broadly disclaiming that he had ever sexually assaulted someone, defense counsel opened the door for the State to cross-examine Garcia, and to present rebuttal evidence of an extraneous offense of the same character as the charged aggravated sexual assault."). The rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted. TEX. R. EVID. 404(b). And a defense strategy that avoids the introduction of extraneous offenses under Rule 404(b) is not constitutionally ineffective. On the record before us, Marquez has failed to demonstrate deficient performance in trial counsel's cross-examination of Quiroz.

Marquez's third complaint is that counsel was ineffective for failing to register Rule 404(b) objections to Quiroz's statements, contained within the SANE report, about learning of Marquez's history as a sex offender.[4] An appellant who claims ineffective assistance based on a failure to object "must demonstrate that if trial counsel had objected, the trial court would have committed error by overruling the objection." *Gauna v. State*, 534 S.W.3d 7, 12 (Tex. App.—San Antonio 2017, no pet.).

Marquez argues that these statements were subject to a Rule 404(b) objection and counsel's failure to object to them resulted in them being "provided to the jury during deliberations." These statements in the SANE report were never mentioned during trial. As the State notes, "Trial counsel could have theorized it was better to stay quiet and not call attention to the [statements] than object and give reason for the State to argue for its admission under some 404(b) theory all

---

[4] Those statements, contained in the "Mini Psychosocial Assessment" part of the report, are:

- "Ms. Quiroz stated that when she went to file for child support she learned that Mr. Marquez has a prior record as a sex offender. Since the outcry and finding out about his past sex offender history, Ms. Quiroz is seeking a restraining order against Mr. Marquez."
- "Since learning of the outcry and the prior sex offender record of Mr. Marquez, Ms. Quiroz is seeking a protective order for her and her 6 children."

Marquez had a 1990 conviction for "burglary of a building to commit sexual assault."

but [e]nsuring the jury would hear the evidence." Even if Marquez is right though, that if trial counsel had objected, the trial court would have committed error by overruling the objection,[5] he cannot show prejudice on this record, where it is unclear whether the jury was even aware of the statements buried within the SANE report.

Marquez next claims that trial counsel was ineffective for failing to object to the State's late designation of Dr. Natalie Kissoon as a witness. But Marquez cannot demonstrate that if trial counsel had objected, the trial court would have committed error by overruling the objection. *Gauna*, 534 S.W.3d at 12. An appellate court reviews a trial court's decision to permit a late-noticed witness to testify under an abuse of discretion standard. *Wood v. State*, 18 S.W.3d 642, 649 (Tex. Crim. App. 2000). It is not clear that the trial court would have abused its discretion in overruling an objection to the designation of Dr. Kissoon as a witness. Factors to consider are whether there is a showing of bad faith on the part of the prosecutor in the late designation and whether the defendant could reasonably anticipate that the witness would testify although her name was not previously disclosed. *Nobles v. State*, 843 S.W.2d 503, 514–15 (Tex. Crim. App. 1992).

Here, there is no showing that the State failed to disclose Dr. Kissoon through bad faith. Rather, the record shows that the expert witnesses who were disclosed in the initial witness list, Dr. Norat and Dr. Kellogg, were the subject of the State's second motion for continuance, which

---

[5] The parties and the trial court were in league in making sure the jury did not learn about Marquez's status as a registered sex offender:

> DEFENSE COUNSEL: May we approach? Hold on. Judge, before the jury comes in, we'd like to have a hearing outside the presence of the jury on Detective Stoeckle's testimony as to any arrest warrants or anyone he contacted with the registered offenders—registered offenders office.
> THE COURT: Is this related to your motion in limine?
> DEFENSE COUNSEL: Yes.
> THE COURT: Okay. So, State, are you intending to have this witness answer any questions about the motion in limine about any prior extraneous or any bad acts from Mr. Marquez?
> PROSECUTOR: No, we are not, Your Honor.
> DEFENSE COUNSEL: Or any arrest warrants from that office?
> THE COURT: Okay. Make sure you instruct your witness that they're not to discuss that.
> PROSECUTOR: Okay.

was filed directly after the State learned that Dr. Norat "had a parent pass away." The State said it could go forward with Dr. Kellogg, but not until December 6, because Dr. Kellogg was traveling until then. When that motion was not granted, the State filed its motion to designate Dr. Kissoon as a possible Center for Miracles witness. Marquez could have reasonably anticipated that one of the examiners from the Center for Miracles would testify about the SANE exam in his trial for sexual assault. *See Branum v. State*, 535 S.W.3d 217, 226 (Tex. App.—Fort Worth 2017, no pet.) ("Branum could have reasonably anticipated that a representative from the MEO would testify to the causes of Bennett's death in her trial for intoxication manslaughter."); *Taylor v. State*, 268 S.W.3d 571, 584 (Tex. Crim. App. 2008) (noting widespread admission of statements made for purposes of medical diagnosis or treatment under Rule 803(4) in child abuse cases). On this record, we cannot conclude that counsel's decision not to object to the jury receiving this testimony from a witness who was not present when B.C.'s sexual assault nurse examination was performed demonstrates deficient performance. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

Marquez nevertheless argues that he was prejudiced because Dr. Kissoon was able to testify, as an expert, that the lack of physical evidence of sexual assault in this case was not surprising because: 1) it is rare that sexual abuse will leave an injury in the first place, and 2) most injuries heal quickly. Marquez contends, "Without this testimony, the jury would not have had any explanation regarding the lack of physical evidence of sexual assault, and would have presumably made different inferences concerning this evidence at trial." That the jury would have made different inferences is, in this case, conjecture; the conduct alleged—the one-time penetration of a middle-school aged child with a finger, and the touching of her breasts—is not the kind of conduct that obviously causes physical injury.

Marquez's last complaint has to do with trial counsel's motion for continuance. Marquez argues that trial counsel's use of "conclusory statements" in his motion "failed to preserve any claim that Mr. Marquez may have had concerning [mitigating and motive] evidence that could have been obtained had [trial counsel] had the additional time to prepare the case." A criminal action may be continued on the written motion of the State or of the defendant, "upon sufficient cause shown; which cause shall be fully set forth in the motion." TEX. CODE CRIM. PROC. ANN. art. 29.03. A motion for continuance must be written and sworn in order to preserve any error on appeal. *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012). "The burden is upon the party seeking a continuance to show himself entitled to it by definite, exact, and certain averments." *Eads v. State*, 252 S.W. 531, 532 (Tex. Crim. App. 1923) (op. on reh'g). Trial counsel's motion, as Marquez acknowledges, was written and sworn. Trial counsel's motion was also specific: it asked for time to review a document the State had just given counsel, an "8 page document regarding a ChildSafe Referral of the Complainant that had not previously been included in the Discovery Material" and time to make good on his "arrangements to view a ChildSafe Video of C/W in the above styled and numbered case." In other words, counsel stated the grounds for the ruling he sought "with sufficient specificity to make the trial court aware of the complaint," and he obtained a ruling. TEX. R. APP. P. 33.1. Counsel preserved, rather than waived, any error in the denial of the continuance. Moreover, as discussed above, the State's motion for continuance, filed on the same day, was granted. Under these circumstances, Marquez cannot show prejudice.

We overrule Marquez's second issue.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH